[Sac. No. 2464. In Bank.—February 5, 1917.]

In the Matter of the Estate of JAMES ALDERSLEY, Deceased.

TRUST TO CONVEY LAND AFTER DEATH OF LIFE BENEFICIARY—VOID PROVISION.—Prior to the amendment of August 10, 1913 (Stats. 1913, p. 438), to section 857 of the Civil Code, a trust to receive the rents of real estate and apply them to the use of a person during his life, and after the death of the life beneficiary to convey the property to the survivors of the individuals named as trustees, with power given to the trustees to sell the property prior to the death of the life beneficiary, if the trustees deem it advisable, or if it becomes necessary, was void as to that portion directing a conveyance after the death of the life beneficiary.

ID.—ESTATE OF TRUSTEE DURING LIFE OF BENEFICIARY.—Until the death of the life beneficiary, the estate which the trustees held was one

merely adequate for the purpose of executing the trust. At no instant of time did the trustees possess the equitable estate in remainder, and at no instant of time was it possible for a merger to take place.

ID.—CONSTRUCTION OF DEED—WORDS OF ABSOLUTE CONVEYANCE RESTRICTED BY TRUST PROVISIONS—TERMINATION OF TRUST—REVERSION TO HEIRS OF TRUSTOR.—A deed which, after employing words of absolute conveyance to the grantees, "or the survivors of them, their heirs and assigns forever," clearly restricts the fee conveyed to the grantees to and for the purposes of such trusts, cannot be construed as a direct grant to the grantees, or the survivors of them. Upon the death of the life beneficiary the trusts created by the deeds terminated, and the property descended in fee to the heirs of the trustor.

ID.—SALE BY TRUSTEES AND BENEFICIARY DURING LIFE OF TRUST.—Under the power of sale conferred on the trustees, they were authorized, prior to the death of the life beneficiary, to sell the trust property, and their conveyance thereof in fee, joined in by such beneficiary, passed his equitable life estate and his reversionary interest therein.

ID.—USE OF PROCEEDS OF SALE AND INTEREST THEREON BY TRUSTEES.—A provision of such trust, authorizing the trustees to use the "rents, issues and profits" of the land in the performance of their duties, empowers them to utilize in lieu thereof the interest on the consideration received from the sale of the premises, but does not give them the right to use any part of the principal for the purposes of the trusts.

ID.—ESTATE OF DECEASED PERSON—ACCOUNTING BY REPRESENTATIVE OF DECEASED ADMINISTRATOR.—Under section 1639 of the Code of Civil Procedure, upon the death of the administratrix of the estate of a deceased person, her accounts as such administratrix may be presented and filed by her personal representative.

ID.—ALLOWANCE OF CLAIMS — DELAY IN PRESENTATION — APPEAL.—The allowance by the court of claims against the estate of a deceased person will not be disturbed on appeal on the ground that they were not presented during the time allowed by law, in the absence of evidence affirmatively showing that fact.

ID.—BARRED CLAIMS CANNOT BE ALLOWED.—Claims against an estate of a deceased person, which are barred at the time of their presentation, cannot be allowed by the court.

ID.—FUNERAL EXPENSES—MONUMENT FOR GRAVE—JOINT USE.—It is no objection to a charge for a monument for a decedent that it was also intended to serve as a monument for the grave of his father.

ID.—FEES OF ATTORNEY FOR ADMINISTRATOR.—The attorney for an administrator, who did not fully administer upon the property of the

estate, is not entitled to full commissions, and his fees should be based upon the amount of the estate when the account is finally settled.

APPEAL from an order of the Superior Court of Butte County settling the final account of the legal representative of a deceased administratrix. H. D. Gregory, Judge.

The facts are stated in the opinion of the court.

Clarence N. Riggins, and George F. Jones, for Appellants.

Carleton Gray, for Respondent.

LAWLOR, J.—This is an appeal from an order settling the first and final account of Ellen Williams, as administratrix of the estate of James Aldersley, deceased. She died pending probate and Elbert Aldersley succeeded her as administrator of the said estate, while her daughter, Julia A. Mc-Cloud, became her administratrix and legal representative. The case turns upon the validity of certain trust deeds and the distribution to be made of the moneys received from the sale of the trust property.

John Aldersley was the father of four children, all of whom were living at the time of his death. In 1882 he conveyed a certain parcel of land, known as tract No. 1, to three of his children—Ellen Williams, Edwin and William K. Aldersley—in trust for the benefit and use of his son James, who is the decedent in this estate. On June 10, 1889, John Aldersley made a second conveyance of another parcel of land, designated herein as tract No. 2, to the said grantees, also in trust for the benefit and use of said James. On December 4, 1891, John Aldersley died intestate, leaving his four children as heirs, his wife having predeceased him. Thereafter, on February 13, 1892, James Aldersley, who in 1884 had received a patent from the United States government to a certain homestead, designated herein as tract No. 3, conveyed the land to the same grantees on like terms of trust as the other deeds. Thus the two brothers and the sister held the three parcels of land, which were as a matter of fact contiguous tracts, aggregating 440 acres, all in trust for the benefit and use of their brother James. The three conveyances by which this result was accomplished were substan-

tially identical in form, the provisions pertinent to the consideration of the questions raised by this appeal reading as follows:

". . .

"That said party of the first part, in consideration . . . , does grant, bargain, convey and confirm unto said parties of the second part or the survivors of them, their heirs and assigns forever: All that certain tract of land situate, lying and being . . . in the County of Butte, State of California, . . .

"To have and to hold the above granted premises together with the appurtenances and every part thereof unto said parties of the second part, their survivors and assigns forever in fee, upon trust, nevertheless, and to and for the uses, interests, and purposes hereinafter limited, described and declared, that is to say:

"First: To receive the rents, issues and profits of said premises, and apply the same to and for the use, purpose, support and maintenance of said James Aldersley for and during the term of his natural life.

"Second: After the death of James Aldersley to convey the said premises by deed to said parties of the second part or their survivors or survivor, living at the death of said James Aldersley, their heirs and assigns.

"Third: In case the said parties of the second part deem it advisable, or if it becomes necessary to sell the said before described premises any time prior to the decease of said James Aldersley, said parties of the second part or the survivor, shall have full power and right to sell and convey said premises upon such terms and price as they may deem best and for the interest of their trust. . . . "

William K. Aldersley died on February 15, 1906, leaving four children, who are the contestants herein. Elbert Aldersley, already mentioned as the administrator of the estate of James Aldersley, is one of these children. Thereafter, in pursuance of the terms of the trusts, Ellen Williams and Edwin Aldersley took charge of the property. Julia A. McCloud testified as to this fact as follows: "James Aldersley was a cripple, and Ellen Williams and Edwin Aldersley were his sister and brother. They always cared for him and if he had any affairs, they attended to them. Ellen Williams and James Aldersley had lived upon this property all of my life,

. . . and Edwin Aldersley was with them part of the time.''
On June 26, 1909, the three tracts of land were conveyed to
Julia A. McCloud in consideration of one thousand four hun-
dred dollars in cash and her promissory note secured by mort-
gage for $1,750. It was stated in the deeds from the trustees
that the transfer was made because it was deemed ''advisable
and necessary for all persons interested in said property to sell
all of the said real property.'' The conveyances were
effected in one transaction by four separate grant, bargain,
and sale deeds, each naming Julia A. McCloud as the grantee
in fee, to wit: A deed of tracts Nos. 1 and 2 by Edwin Alders-
ley and Ellen Williams, trustees; a deed of tract No. 3 by
Edwin Aldersley and Ellen Williams, trustees; a deed of
tracts Nos. 1, 2, and 3 by Edwin Aldersley and Ellen Will-
iams individually; and a deed of tracts Nos. 1, 2, and 3 by
James Aldersley, individually. After Julia A. McCloud took
possession of the property, the trustees and James ceased to
live thereon. James died intestate on April 25, 1913.

This brings us to the administration of the estate of James
Aldersley resulting in the present appeal. Ellen Williams,
as we have noted, was appointed the administratrix. On
April 30, 1914, she filed her first and final account. Al-
though on the face of the three deeds of trust it would
appear that James' interest in the trust *res* had terminated,
it is set forth in the account that he had died possessed of an
estate worth $2,433, consisting of the sum of $1,009 cash in
bank, and one thousand four hundred dollars balance unpaid
on the note of Julia A. McCloud which was mentioned in the
last paragraph, and $24 interest thereon. In the evidence it
appears that this sum is the balance remaining on hand from
the $3,150 received from the sale of the three tracts. It is
stated in the account that the administratrix had paid out in
cash in satisfaction of the various claims against the estate the
entire sum of $2,433. Several of these claims were contested,
as we shall presently note in greater detail; but on May 17,
1914, before the account was settled, Ellen Williams died.

As already stated, Elbert Aldersley, one of the contestants,
was then appointed administrator of James Aldersley's es-
tate, and Julia A. McCloud became administratrix of her
mother's estate. The latter was also substituted in her
mother's place as her legal representative in order that the
account could be determined. Before the exceptions to the

account could be heard, Julia A. McCloud filed a second account, alleging: "That in truth and in fact said James Aldersley at the time of his death had no property whatsoever of any kind or nature, and that the property set forth in the papers of said estate as being the property of said James Aldersley, deceased, was, in truth and fact, the property of said Ellen Williams, and Edwin Aldersley, who owned the same in equal shares, and said James Aldersley, deceased, never had any right, title, or interest in or to the same or any part thereof." New exceptions were filed by the contestants, but the court approved the account, and in its order settling it declared that the said sum of $2,433 "with which said Ellen Williams, while administratrix of said estate, credited to said estate was not a part of said estate and was a sole property of herself and of Edwin Aldersley, and that said estate had no interest whatever therein, and the sum was so credited by her to said estate by mistake." The appeal is taken principally from this order.

1. It is contended by the contestants that "the deeds of trust and the conveyances under them are void because they are a trust to convey forbidden by the rule in the Fair estate." (Citing *Estate of Fair*, 132 Cal. 523, [84 Am. St. Rep. 70, 60 Pac. 442, 64 Pac. 1000]; Id., 136 Cal. 79, [68 Pac. 306].) They concede, however, "that the trust to receive the rents, issues, and profits of said premises and apply the same to and for the use, purpose, support and maintenance of said James Aldersley for and during the term of his natural life" is valid. (*Sacramento Bank v. Montgomery*, 146 Cal. 745, [81 Pac. 138].) That the second paragraph requiring a conveyance by the trustees cannot be supported under the rule established by the Fair decision is clear. At the time the deeds were executed, and indeed until the amendment to section 857 of the Civil Code, which went into force August 10, 1913 (Stats. 1913, p. 438), it was the law of this state that a trust to convey was void. It is true that the apparent intention of the trustors was to *vest* the remainder over after the life of James Aldersley in the sister and brothers who should survive him. Had such a provision been expressly made in the deeds, upon the termination of the equitable life estate of James, the entire equitable estate as well as the legal title would be vested in the trustees, and a conveyance as contemplated by the second paragraph would

have been unnecessary. In such a case the provision for a conveyance, if still included, would be regarded as "nothing more than an assurance of title." (*Hofsas* v. *Cummings*, 141 Cal. 525, [74 Pac. 110].) But no words were employed which evidence an independent conveyance of the equitable estate in remainder over to the trustees in their individual capacity. Until the death of James, the estate which they held was merely adequate for the purpose of executing the valid provisions of the trusts. (*Morffew* v. *San Francisco etc. R. R. Co.*, 107 Cal. 587, [40 Pac. 810].) At no instant of time did the trustees possess the equitable estate, and at no instant of time was it possible for a merger to take place.

But the respondent urges that the surviving children are entitled to the entire trust property for other reasons, that, in fact, "the deeds create no trust whatever, except in favor of James Aldersley," and "can only be construed as a direct grant to the three children, or the survivor of them." But the deeds after employing words of absolute conveyance clearly restrict the fee conveyed to the grantees to and for the purposes of the trusts. The actual title conveyed was therefore commensurate for this purpose and no more. Accepting the respondent's contention, and the estate granted to the trustees would be strictly that of an unlimited joint tenancy—"unto said parties . . . *or the survivors of them, their heirs and assigns forever.*" (Italics ours.) But that this was not the intention of the respective trustors is clearly manifested by the terms of the second paragraph. By that paragraph it was obviously intended to provide a method of terminating the joint tenancy upon the death of James and vesting the property in fee in the children of John Aldersley then living. That is to say, it was intended by the trustors that James should possess the beneficial interest until his death, and that the children surviving him should take the legal title freed from the trusts only when it was duly conveyed to them by virtue of the authority attempted to be created under the second paragraph. The language employed expresses just that intention. But such a scheme was forbidden by law. It must therefore fail. Upon James' death the trusts created by the deeds terminated, and the property descends in fee to the heirs of the respective trustors. (Civ. Code, sec. 866.)

This presents the question whether the attempted sale of the three tracts to Julia A. McCloud passed any interest which James at the time possessed in the property, and, if so, the proportion of the consideration received therefrom which properly belongs to his estate. It is conceded that the trustees had no power of sale other than the power granted under the provisions of the third paragraph. But it is insisted that that provision is void principally because it is inseparable from the provision of the second paragraph. We find no merit in the contention. The deeds expressly provide that such a sale should be made whenever the trustees "deem it advisable, or if it becomes necessary." To hold as contended that the third paragraph only authorizes a sale for the purposes of carrying out the provisions of the second paragraph, referring to the distribution of the principal, is to give the language used a strained construction which is neither required by the context of the instruments nor in harmony with the obvious intention of the trustors. But even if the provision be merely regarded as a power of sale, the validity of the sale cannot be questioned. Moreover, as has been stated, James, for a valuable consideration, personally gave his deed to Julia A. McCloud purporting to convey the title of the three tracts to her. This in itself is sufficient to remove all doubt that the title which James possessed in the tracts has passed to the grantee, and we are here concerned with no other interest. This interest of James consisted, in part, of an equitable life estate in tract No. 3 and the reversion therein after satisfaction of the trust. The deeds passed the entire title to this tract. In addition, he possessed an equitable life estate in tracts Nos. 1 and 2, and, as John Aldersley had died intestate leaving the four children as his heirs, was entitled to a one-fourth interest in the reversion thereof. This, too, was conveyed to Julia A. McCloud. In consideration of the property conveyed to her, as we have pointed out, a sum aggregating $3,150 was paid. No evidence, however, was heard by the probate court as to the exact amount of the consideration received by the two trustees which represents the interest possessed by James in the three tracts. This fact must be determined in order to ascertain what amount should now be credited to his estate.

There is another question to be considered: Under the terms of the trusts, the trustees had authority to use the "rents,

issues and profits'' of the tracts of land in the performance
of their duties. Contention is made that this power does not
include the right to utilize in lieu thereof the interest on the
consideration received from the sale of the premises. But a
fair construction of the instruments leaves no doubt that the
words must be construed in that sense. It does not follow,
however, that the trustees had any right to use any part of
the principal for the purposes of the trusts. It was their
duty to preserve the principal until they had returned it to
the trustors or their estates after the terms of the trusts had
been fully performed. Notwithstanding this, Edwin Alder-
sley, testifying at the hearing of the account, stated that part
of the consideration was expended in caring for James dur-
ing the ensuing four years—''used it up for his living ex-
penses, doctor bills, and other things.'' It was stated that
the amount thus expended amounted to $717. Whether this
expenditure was made with the consent of James from his
share of the property, or was merely paid out of the amount
received from the sale of the entire property without regard
to his consent, are matters which have not been shown, but
which will be required to be established before the amount of
the property to be accounted for in this estate can be defi-
nitely determined. It may be remarked, however, that unless
the contrary be shown, and since James received the benefit
of the said expenditure, the presumption would be that the
money was paid solely from his share of the moneys held in
trust.

2. We see no force to the objection made to the filing of the
account herein by Julia A. McCloud after Ellen Williams
had died. (Code Civ. Proc., sec. 1639.) The court granted
her authority to file it as the legal representative of Ellen
Williams, and sufficient facts are set forth in the account to
support the order.

Objection was also made to the allowance by the court of
the claim for medical attendance during the last illness, costs
of burial, and other funeral expenses. In support of these
claims Edwin Aldersley testified that they were paid, and
various vouchers which had been filed with the first and final
account by Ellen Williams were introduced in evidence. It
is urged that none of the claims was presented against the
estate during the time allowed by law. (Code Civ. Proc.,
sec. 1493.) But the contestants introduced no evidence in

support of their contention. For instance, no affirmative evidence was offered to the effect that Ellen Williams, assuming that she had paid the various claims before she was appointed administratrix, as it is claimed, had not afterward in due time presented her claim against the estate. In the absence of a showing to the contrary, we cannot disturb the ruling of the court in allowing the claims. The presumption is that the rulings were proper.

Two other claims were presented by Edwin Aldersley and Ellen Williams for services rendered in nursing and caring for James for the two years prior to his death. The contestants served and filed exceptions to these claims alleging that they were barred at the time of presentation, that they were excessive in amount, and that any services rendered by the trustees were in fact gratuitous. Although the respondent admitted that the claims were barred and offered no proof in support of them, they were allowed by the court. This is clearly error. Such claims should not be allowed.

It is no objection to the charge for the monument for James Aldersley that it was also intended to serve as a monument for the grave of John Aldersley. No other objection was made to the claim except the general objection that it was likewise barred.

The attorney for Ellen Williams was allowed fees on the full amount accounted for by her in the first and so-called final account. He did not fully administer upon the property and was therefore not entitled to full commissions. (*Estate of Piercy*, 168 Cal. 750, [145 Pac. 88].) Moreover, his fees should be based upon the amount of the estate when the account is finally settled.

No other points require mention.

Order reversed.

Shaw, J., Melvin, J., Sloss, J., Henshaw, J., Lorigan, J., and Angellotti, C. J., concurred.

Rehearing denied.