[Civ. No. 1725.   Third Appellate District.—October 16, 1917.]

## LYELL K. ALDERSLEY, Appellant, v. JULIA A. McCLOUD et al., Respondents.

TRUSTS—VOID TRUST TO CONVEY—SEPARABILITY OF VALID FROM IN-VALID PROVISIONS.—Although the trust to convey contained in a deed of real property to trustees, with directions to apply the income for the use and support of a child of the trustor for life and after his death to convey the fee to the other children, was void under section 857 of the Civil Code before its amendment (Stats. 1913, p. 438), a provision authorizing the trustees to sell the prop-erty before the death of the life beneficiary if they "deem it neces-sary or if it becomes advisable . . . upon such terms and price as they may deem best and for the interest of their trust," is not in-separably connected with the invalid trust, but gives the trustees a valid discretionary power to sell, and a sale made by the trustees during the existence of the equitable life estate was valid.

ID.—IMPLIED DIRECTION TO APPLY PROCEEDS OF SALE.—The power to sell in such case is not invalid for failure of the deed to contain any direction as to the application of the proceeds after any sale, because the direction to apply the income of the property in its changed form according to the terms of the instrument creating the trust is clearly and unquestionably implied.

ID.—CONVEYANCE BY ONE TRUSTEE OF HIS INDIVIDUAL INTEREST—ES-TATE AND POWERS OF SURVIVING TRUSTEES.—The fact that one of

35 Cal. App.—2

the trustees executed a deed conveying whatever individual interest he had in the trust property, as an heir of the trustor, could not have the effect of destroying the clear right to sell, which continued to exist in the surviving trustees.

APPEAL from a judgment of the Superior Court of Butte County. H. D. Gregory, Judge.

The facts are stated in the opinion of the court.

Clarence N. Riggins, and George F. Jones, for Appellant.

Carleton Gray, for Respondents.

HART, J.—This is a suit in partition, the object of which is to secure a decree partitioning and dividing between the parties hereto, according to their respective interests therein, the three several tracts of land specifically described in the complaint. These several tracts of land are separately described in as many subdivisions of paragraph 3 of the complaint.

The court made and caused to be entered an interlocutory decree whereby it directed the partition between the plaintiff and the defendant, Julia A. McCloud, of the tract described in subdivision 3 of paragraph 3 of the complaint and dismissed the action in so far as it relates to the other lands described in the complaint. The decree, so far as the two last-mentioned tracts are concerned, is a final judgment, and it is from said judgment or so much of the decree as directs the dismissal of the action in so far as it relates to the lands described in subdivisions 1 and 2 of paragraph 3 of the complaint that this appeal is prosecuted. The appeal is upon the judgment-roll alone. All the facts, however, are set out in the court's findings.

The history of this case is substantially given and some of the salient facts hereof were presented to and considered by the supreme court in the recently decided case of *In re Aldersley's Estate,* 174 Cal. 366, [163 Pac. 206]. The appeal in that case arose over objection to an order settling the first and final account of Ellen Williams, the administratrix of the estate of James Aldersley, deceased, and involved, as the present appeal involves, the question of the scope and effect of certain deeds of trust. The facts which it is necessary to consider here are stated by the supreme court in the opinion in said case as follows:

"She [Ellen Williams] died pending probate and Elbert Aldersley succeeded her as administrator of the said estate, while her daughter, Julia A. McCloud, became her administratrix and legal representative. The case turns upon the validity of certain trust deeds, and the distribution to be made of the moneys received from the sale of the trust property.

"John Aldersley was the father of four children, all of whom were living at the time of his death. In 1882 he conveyed a certain parcel of land, known as tract No. 1, to three of his children—Ellen Williams, Edwin and William K. Aldersley—in trust for the benefit and use of his son James, who is the decedent in this estate. On June 10, 1889, John Aldersley made a second conveyance of another parcel of land designated herein as tract No. 2 to the said grantees, also in trust for the benefit and use of said James. On December 4, 1891, John Aldersley died intestate, leaving his four children as heirs, his wife having predeceased him. Thereafter, on February 13, 1892, James Aldersley, who in 1884 had received a patent from the United States government to a certain homestead, designated herein as tract No. 3, conveyed the land to the same grantees on like terms of trust as the other deeds. Thus the two brothers and the sister held the three parcels of land, which were as a matter of fact contiguous tracts, aggregating 440 acres, all in trust for the benefit and use of their brother James. The three conveyances by which this result was accomplished were substantially identical in form, the provisions pertinent to the consideration of the questions raised by this appeal reading as follows:

" ' . . . That said party of the first part, in consideration . . . does grant, bargain, convey and confirm unto said parties of the second part or the survivors of them, their heirs and assigns forever: All that certain tract of land situate, lying and being . . . in the County of Butte, State of California, . . .

" 'To have and to hold the above granted premises together with the appurtenances and every part thereof unto said parties of the second part, their survivors and assigns forever in fee, upon trust, nevertheless, and to and for the uses, interests, and purposes hereinafter limited, described and declared, that is to say:

" 'First: To receive the rents, issues and profits of said premises, and apply the same to and for the use, purpose, support and maintenance of said James Aldersley for and during the term of his natural life.

" 'Second: After the death of James Aldersley to convey the said premises by deed to said parties of the second part or their survivors or survivor, living at the death of said James Aldersley, their heirs and assigns.

" 'Third: In case the said parties of the second part deem it advisable, or if it becomes necessary to sell the said before described premises any time prior to the decease of said James Aldersley, said parties of the second part or the survivor, shall have full power and right to sell and convey said premises upon such terms and price as they may deem best and for the interest of their trust. . . . '

"William K. Aldersley died on February 15, 1906, leaving four children, who are the contestants herein. Elbert Aldersley, already mentioned as the administrator of the estate of James Aldersley, is one of these children. Thereafter, in pursuance of the terms of the trusts, Ellen Williams and Edwin Aldersley took charge of the property. . . . On June 26, 1909, the three tracts of land were conveyed to Julia A. McCloud in consideration of one thousand four hundred dollars in cash and her promissory note secured by mortgage for $1,750. It was stated in the deeds from the trustees that the transfer was made because it was deemed 'advisable and necessary for all persons interested in said property to sell all of the said real property.' The conveyances were effected in one transaction by four separate grant, bargain, and sale deeds, each naming Julia A. McCloud as the grantee in fee, to wit: A deed of tracts Nos. 1 and 2 by Edwin Aldersley and Ellen Williams, trustees; a deed of tract No. 3 by Edwin Aldersley and Ellen Williams, trustees; a deed of tracts Nos. 1, 2, and 3 by Edwin Aldersley and Ellen Williams individually; and a deed of tracts Nos. 1, 2, and 3 by James Aldersley, individually. After Julia A. McCloud took possession of the property, the trustees and James ceased to live thereon. James died intestate on April 25, 1913."

In addition to the facts above narrated, the following further facts were found by the court in the present case, viz.: That the said William K. Aldersley, on the fifteenth day of October, 1903, by a deed of gift, conveyed to the plaintiff

herein all his right, title, and interest in and to all the lands granted in trust to the trustees by John Aldersley; that said deed to the plaintiff was, on the twenty-sixth day of August, 1914, duly recorded in the office of the county recorder of Butte county; that the plaintiff is one of the children of said William K. Aldersley.

It is conceded by the appellant that the deeds to Julia McCloud passed all the interest in the property owned by James Aldersley, Edwin Aldersley, and Ellen Williams, they having joined in the deeds and thus personally bound themselves. It is admitted that the plaintiff did not join in these deeds.

It is contended that the trust deeds did not vest in the trustees the fee in the lands which are the subject thereof, but that they conveyed only such estate therein as was necessary for the purposes of the trust, and that, since the trust was to exist only during the life of James Aldersley, title to the property vested in the plaintiff and the defendant as successors in interest to John Aldersley's heirs. Or, to state the position of counsel for the appellant on this proposition in their own language, it is as follows: "The only estate that the trustees had was the legal title *for the life* of James Aldersley. The *fee* at all times remained in John Aldersley and after his death in his heirs, the plaintiff having a one-fourth interest in the fee at the time of the deed to Julia A. McCloud. The utmost that can be said as to the effect of this conveyance (the deed to Julia McCloud) would be that the trustees thereby conveyed such interest as they had in the property, and, therefore, conveyed the title to the property during the equitable life estate of James Aldersley. But the trustees did not at the time or at any time have the fee or any title to the fee in the property, the remainder over, after the death of James Aldersley—had no title thereafter, and, therefore, had no interest in that title and could not convey the same."

It is further contended that the provision as to the sale of the property by the trustees is void as a trust to sell, "because a trust for purposes of sale" under subdivision 1 of section 857 of the Civil Code must be mandatory and not discretionary; but that (so the argument further proceeds), even if said provision was otherwise valid, it must fall, because it relates to and is therefore inseparably connected with the provisions of the second paragraph of the trust deeds (the trust

to convey), which is invalid. (*Estate of Fair*, 132 Cal. 523, [84 Am. St. Rep. 70, 60 Pac. 442, 64 Pac. 1000]; Id., 136 Cal. 79, [86 Pac. 306].) It is further argued that the trust to sell is void because "the deeds did not contain any direction for the application or disposal of the proceeds, as required by the language of the code above quoted (Civ. Code, sec. 857), unless, indeed, the provision be found in paragraph 2, which is void."

The further point is urged that the power to sell is a mere collateral or naked power, not being coupled with an interest; hence, so it is argued, said power expired with the death of John Aldersley, and that therefore the conveyance by the trustees to Julia A. McCloud was wholly void, the further argument being advanced that, to perpetuate the life of the power beyond the decease of John Aldersley, the interest with which it must be coupled must be one arising by virtue of the trusteeship or created by the deeds of trust themselves; that the interest accruing to the trustees by reason of heirship, having no connection with the trust created by the deeds, cannot have the effect of reviving the power revoked by the death of the trustor.

Taking up first the points made against the validity of the power with which the trustees are invested by the deeds of trust to sell the property, it is conceived that a reply thereto is to be found in the opinion in the case of *Estate of Aldersley*, 174 Cal. 366, [163 Pac. 206]. Referring to that provision in the said deeds, the court in that case said:

"This presents the question whether the attempted sale of the three tracts to Julia A. McCloud passed any interest which James at the time possessed in the property, and, if so, the proportion of the consideration received therefrom which properly belongs to his estate. It is conceded that the trustees had no power of sale other than the power granted under the provisions of the third paragraph. But it is insisted that that provision is void principally because it is inseparable from the provision of the second paragraph. We find no merit in the contention. The deeds expressly provide that such a sale should be made whenever the trustees deem it advisable, or if it becomes necessary. To hold as contended that the third paragraph only authorizes a sale for the purposes of carrying out the provisions of the second paragraph, referring to the distribution of the principal, is to give the

language used a strained construction which is neither required by the context of the instruments, nor in harmony with the obvious intention of the trustors. But even if the provision be merely regarded as a power of sale, the validity of the sale cannot be questioned.''

It is true that the court, following the use of the above language, declared that it was in that case concerned only with the interest of James Aldersley in the property and the effect of the sale upon said interest, and further said that the fact that James Aldersley gave his personal or individual deed to Julia A. McCloud, ''purporting to convey the title to the three tracts of land to her,'' in itself ''is sufficient to remove all doubt that the title which James possessed in the tracts has passed to the grantee.'' But this language may not be construed to mean (as counsel for the appellant seem to construe it) that the court intended to say that the sale by the trustees under the power to make the same provided in the deeds, while valid as to James, was not valid as against the other heirs of John Aldersley. Indeed, the language of the opinion immediately following that above quoted herein clearly shows that the court did not intend to state therein any such proposition or to convey any such impression. It will be noted that the language is: ''But even if the provision be merely regarded as a power of sale, the validity of the sale cannot be questioned. *Moreover* [italics ours], as has been stated, James, for a valuable consideration, personally gave his deed to Julia A. McCloud,'' etc. The word ''moreover'' means ''beyond this'' or ''besides this,'' so that the meaning of the opinion, to paraphrase the language, is: That the sale by the trustees was not only valid and conveyed full title to Julia A. McCloud, but that all possible doubt of James' interest in the three tracts having been conveyed to her is wholly removed by the personal deed of James himself, for a valuable consideration, conveying to her whatever interest he possessed in the property described in the trust deeds.

While, as in effect above stated, we think it is clear that the conclusion of the supreme court that the sale by the trustees was valid answers all the points made here by the appellant against the validity of the trust to sell and the sale (for it is inconceivable that the sale should be valid and the trust to sell be invalid), there is, nevertheless, one of the points so made to which we may properly give brief special attention. As

seen, the appellant contends that the provision in the deeds authorizing the trustees, under the circumstances specified, to sell the property is invalid ''because the deeds did not contain any direction for the application or disposal of the proceeds, as required'' by section 857 of the Civil Code, as that section read at the time the deeds here were made and before the amendment thereof, so that trusts for the purpose of conveying property may legally be created. The language of said section, as it originally read, and which is pertinent to this point is: ''Express trusts may be created for any of the following purposes: 1. To sell real property, and apply or dispose of the proceeds in accordance with the instrument creating the trust.''

The clause in the deeds empowering the trustees to sell the property provides, as we have seen, that such sale may be made, if the trustees deem it advisable, upon such terms and at such price as they ''may deem best for the interest of their trust.'' The rational and, indeed, it seems to us, the natural interpretation of that language, viewed in the light of the explicitly explained purpose of the trust, gives to it but one meaning, which is this: That, if found by the trustees to be for the best interest of the beneficiary for whose benefit the trust was created to sell the property and thus convert the subject matter of the trust into money, they were to adopt that course and so administer the trust in the changed form as that the beneficiary should receive, not the principal, but whatever income that might be derived therefrom. Thus the provision refers, not to the second paragraph of the deeds, as counsel maintain, but to the first paragraph which establishes and vests in the beneficiary whatever beneficial or equitable interest he acquired in the lands by virtue of the deeds of trust; and thus the beneficiary would receive, as fully as though the *corpus* of the trust property remained in the form of land, the issues or profits (the interest) accruing from the investment or the loaning of the money. Thus, it seems to us, a direction for the application of the proceeds of the sale according to the terms of the instrument creating the trust is clearly and, indeed, unquestionably implied. There can be no doubt that a court of equity, testing the meaning of the provision according to the principles which govern that court, would so decree, if the trustees failed or refused to apply whatever the money earned to the ''use, support, and mainte-

nance of James Aldersley.'' Of course, like the land, had the subject of the trust so remained, the principal sum of money, upon the death of James, would have gone to the estate of the trustor, he having died before the death of James, and the trust to convey being void.

To the point first above stated, namely, that the trustees, holding at no time the fee in the property or the remainder over upon the death of James Aldersley, could not therefore convey the fee, the answer is that, while it is true that they were not vested with the remainder in fee after the termination of the equitable estate of James, there was nevertheless necessarily vested in them, as trustees, such an estate in the lands conveyed as was essential to the accomplishment of the valid purposes of the trust. Hence, the right to sell necessarily carried with it the authority to convey the fee. (*Morffew* v. *San Francisco & S. R. Co.*, 107 Cal. 587, 595, [40 Pac. 810]; *Estate of Aldersley*, 174 Cal. 366, [163 Pac. 206].) In the first mentioned case it is said: ''The quantity of interest which passes to the trustee in case of an express trust is commensurate with the necessities of his office; the trustee shall have an estate in fee, if that is necessary to enable him to perform the duties imposed upon him, although it is not in terms given to him by the instrument creating the trust; on this principle a devisee of lands in trust to sell clothes the trustee with the fee, because necessary to the execution of the trust, the rule being compendiously stated that the trustees 'will take an estate adequate to the execution of the trust—no more nor less.' '' (Perry on Trusts, 5th ed., sec. 320; *Young* v. *Bradley,* 101 U. S. 787, 25 L. Ed. 1044].) Quite plainly, if this proposition were not sound and unimpeachable, the provision for the sale of the property would be meaningless and wholly nugatory, and the full and proper execution of the ultimate purpose of the trust, according to the best interests of the *cestui que trust,* might be entirely frustrated. What could the trustees sell, if not a full and complete title to the entire estate in the land? But the soundness of the proposition above stated is too obvious to require further notice of it.

It will not, of course, be contended that, if the provision authorizing the sale of the land is valid, as we hold, upon the authority of *In re Aldersley's Estate,* 174 Cal. 366, [163 Pac. 206], that it is, the right to sell and convey the fee was affected

either by the death of William K. Aldersley (one of the trustees) or by the fact that said William K. attempted to convey to the plaintiff, prior to the conveyance of the land by the trustees to Julia A. McCloud, whatever interest he (Wm. K.) might have had as an heir in the estate of John Aldersley.

The deeds to the trustees not only conveyed to them, for the purposes of the trust, the property and vested in them the powers essential to the execution of the trust, but also conveyed the lands to and vested such powers in the remaining trustee or trustees, upon the death of one or more of them. Not only is this true, but paragraph 3 of the deeds, providing for the sale of the property, itself contains a like provision— that is to say, it provides that the power of sale shall be in the trustees named or their survivor. Thus it is clear that the right to sell continued to exist in the surviving trustees, after the death of William K. Aldersley. And, obviously, his deed to the plaintiff could not have the effect of destroying that right. Of course, the plaintiff, as the successor of his father, William K. Aldersley, is entitled to whatever interest he would legally be entitled to from his father's one-fourth interest in the estate of John Aldersley; but the lands having been sold by the trustees, by virtue of the right thus given them by the trust deeds, prior to the death of James, the deed from William K. to the plaintiff was without force and effect.

The judgment is affirmed.

Chipman, P. J., and Burnett, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 14, 1917.