[L. A. No. 8247. In Bank.—September 29, 1925.]

In the Matter of the Estate of MYRA JOSEPHINE WEL-
LINGS, Deceased. THE MICHIGAN TRUST COM-
PANY (a Corporation), Appellant, v. MARION
FRANCES BRONSON et al., Respondents.

[1] WILLS—FOREIGN CORPORATION AS TRUSTEE—VESTED ESTATE—SUB-
SEQUENT LEGISLATION.—Where a foreign corporation, authorized
to do a trust business in this state, was named as residuary trus-
tee and legatee under a will of a testatrix who died prior to
the act of the legislature (Stats. 1923, p. 169) by which the
right of foreign corporations to act as trustees of wills in this
state was withdrawn and abrogated, the trust estate became
vested in said foreign corporation upon the death of the testatrix,
and it could not be divested of such estate or prevented from exe-
cuting the trust by an act of the legislature passed subsequent to
the vesting of such estate, even though such act was passed prior
to the decree of distribution.

[2] ID.—DECREE OF DISTRIBUTION — APPEAL — SUSPENSION OF EXECU-
TION.—An appeal from an order of distribution of an estate has
the effect of suspending the execution of the decree.

[3] ID.—RIGHT TO EXCHANGE PROPERTIES—CONSTRUCTION OF TRUSTS.
Where the testatrix provides in her will that the trustee might
"bargain, sell and convert into money any part" of the estate,
and, in subsequent parts of the will, provides that the trustee
might "bargain, sell, transfer and convey, and in any manner dis-
pose" of the estate "with all the powers and authority" the tes-
tatrix "would possess if living," but it is apparent that she used
the word "bargain" and the other words in connection therewith
in the sense of selling the property for cash, or on terms, rather
than in the sense of trading or exchanging such property, such
provisions do not render the trust invalid, as being contrary to
section 857 of the Civil Code, which limits the purposes for which
a trust may be created, and which purposes do not in terms in-
clude the right to make exchanges in trust property.

[4] ID.—TRUSTS—DISCRETIONARY POWERS OF SALE.—A testamentary
trust is not invalid because the powers of sale therein given to
the trustee are discretionary and not imperative.

1. See 25 Cal. Jur. 314.
2. See 12 Cal. Jur. 211.
4. See 25 Cal. Jur. 305.

[5] Id.—Powers of Trustee—Making of Extensive Improvements. Section 857 of the Civil Code does not purport to enumerate the various rights which a trustee may possess under a general authority such as may be provided in a will creating a trust; and a testamentary trust is not open to the objection that, under the clause of the will whereby the trustee is given "all" the powers and authority that the decedent would have if living, the trustee might make extensive and substantial improvements on the trust property.

[6] Id. — Construction of Trusts — Validity Favored. — It is only when the language actually used by a testator in the trust provisions of his will admit of no other reasonable construction than that it creates an invalid trust that a court will declare this to be its effect.

(1) 12 C. J., p. 963, n. 94; 40 Cyc., p. 1770, n. 53.    (2) 24 C. J., p. 536, n. 83.    (3) 7 C. J., p. 920, n. 35, p. 922, n. 42; 40 Cyc., p. 1767, n. 43.    (4) 40 Cyc., p. 1728, n. 57, p. 1823, n. 87.    (5) 40 Cyc., p. 1826, n. 1.    (6) 40 Cyc., p. 1728, n. 57.

APPEAL from orders of the Superior Court of Los Angeles County, settling a final account and distributing the property under a will, and denying distribution to a trustee. Frank R. Willis, Judge. Reversed.

The facts are stated in the opinion of the court.

Flint & Mackay and Robert B. Jackson for Appellant.

Leland J. Allen for Respondents.

HOUSER, J., *pro tem.*—This appeal involves two separate orders made by the probate court in the course of final distribution of the assets of the estate of Myra Josephine Wellings, deceased.

The first of the two orders from which an appeal is taken is that entitled "Order settling final account and distributing the property under the will," and the second thereof was an order denying distribution of said estate to the Michigan Trust Company as trustee under the provisions of the will.

6. See 25 Cal. Jur. 295.

The facts material to this inquiry are that following the death of her husband Mrs. Wellings also died, leaving a will, by the third paragraph of which it was provided:

"If my husband shall not survive me, then I give, devise and bequeath all the said rest, residue and remainder of my estate unto the Michigan Trust Company, organized and existing under the laws of the state of Michigan, of Grand Rapids, Michigan, in trust, however, for the following purposes: . . . "

In connection with the said trust the will contained appropriate directions regarding the payment of the income to be derived from the assets of the estate to Marion Frances Bronson and Ruth Doris Bronson, granddaughters of the testatrix, and, finally, after a lapse of several years, the payment to the same persons of the "residue and remainder" of the estate.

In the due course of administration a petition was presented to the probate court praying for the settlement of the final account of the administrator with the will annexed and for distribution of the estate to the said granddaughters of the testatrix, the effect of which petition was to except the Michigan Trust Company from said distribution. Between the time of the death of the testatrix and the date of filing the petition for distribution of the estate the Michigan Trust Company had fully qualified for the purpose of acting as trustee, as provided by the terms of said will. (*Estate of Wellings,* 192 Cal. 506 [221 Pac. 628].)

Thereafter the Michigan Trust Company filed its objections to the said petition for distribution and prayed that the said estate be distributed to it, as trustee of said estate under the said will; following which, objections were filed by the said granddaughters of decedent to the appointment of said Michigan Trust Company as trustee, etc. Thereupon an order of said probate court was made denying distribution to the Michigan Trust Company (but without making any order of distribution to the said granddaughters); from which order the Michigan Trust Company appealed to this court, and which appeal resulted in an order reversing the said order of the probate court, the language used by this court in the course of its opinion thereon being: "Appellant [Michigan Trust Company], having complied with the laws of this jurisdiction governing the right of foreign corpo-

rations to do business in this state, and being a devisee under the will, it was entitled to have distribution of the estate made to it pursuant to the terms of the will of the deceased testatrix. (*Estate of Rawitzer*, 175 Cal. 585, 593 [166 Pac. 581].)''

While said appeal was pending and undetermined, and about six weeks before the rendering of the decision therein, the administrator with the will annexed of said estate filed a supplemental account and again prayed for distribution ''of all said estate to the persons entitled thereto''; whereupon ''the order settling final account and for distribution under will'' was made by the court, by which it was decreed that the estate be distributed to the said granddaughters of the testatrix.

Within approximately three weeks after this court had decided that the Michigan Trust Company was ''entitled to have distribution of said estate made to it pursuant to the terms of the will of the deceased testatrix,'' the Michigan Trust Company made application to said probate court to vacate and set aside its said order of distribution, and which application was by said court denied. Thereafter the Michigan Trust Company again petitioned said court for distribution of said estate to it in accordance with the provisions of said will of said testatrix, which petition was likewise denied by said court.

As heretofore stated, this appeal applies first to the order by the probate court by which the estate was distributed to the granddaughters of the testatrix, and, secondly, to the order which denied distribution of the estate to the Michigan Trust Company, as trustee under the provisions of the will. A decision by this court as to one of such orders is necessarily conclusive as to the other.

The Michigan Trust Company is now and at all times mentioned herein was a corporation organized and authorized to transact a trust business under and by virtue of the laws of the state of Michigan. It was, therefore, so far as the state of California was concerned, a foreign corporation. The decision by this court to which reference herein has been had (*Estate of Wellings*, 192 Cal. 506, 521 [221 Pac. 628]), that under the terms of the will of the deceased testatrix said Michigan Trust Company was entitled ''to have distribution of the estate made to it,'' was rendered on December 11, 1923, notwithstanding the fact that on May 2, 1923,

which date preceded by several months the date of the filing of the said opinion by this court (December 11, 1923), by an act of the legislature (Stats. 1923, p. 169), the right theretofore existing of foreign corporations to act as trustees of wills in this state (*Estate of Wellings*, 192 Cal. 506 [221 Pac. 628]) was withdrawn and abrogated. On the petition to this court for rehearing in said case it was suggested by the petitioner:

"That the opinion, we think, failed to take into consideration the fact that the legislature of the state has recognized the injustice of permitting foreign corporations to act as trustee under wills in this state and have repealed those very portions of the Bank Act which this court now holds are constitutional."

With full knowledge, therefore, on the part of this court that the law authorizing foreign corporations to transact in this state a trust business of the nature herein involved had been repealed by legislative enactment, the petition for rehearing was denied. Nevertheless, respondent here urges that because of such last-mentioned act the Michigan Trust Company is not an aggrieved party and hence not entitled to maintain this appeal, for the reason that since the taking effect of said act said corporation cannot qualify as a trustee under the will in question.

The argument made by respondents to the effect that the execution of the said trust by the foreign corporation, Michigan Trust Company, would constitute "doing business in this state" is conceded by appellant to be unanswerable (*Estate of Wellings*, 192 Cal. 506 [221 Pac. 628]), as is also respondents' further contention that a foreign corporation may be entirely excluded from the state; or, having been once granted the right of transacting business therein, may thereafter have such privilege denied it. With so much being admitted, the primary question or questions to be solved are, first, whether the right of the appellant to act as a trustee was "vested," and, if so, secondly, whether subsequent legislation may impair it.

On the former appeal (*Estate of Wellings*, 192 Cal. 506, 510 [221 Pac. 628, 630]) this court, in dealing with the question of the rights of the appellant therein and herein, used the following language:

"An executor appointed by will has the right to act unless there is some express provision of law disqualifying

197 Cal.—13

him. (*Bauquier's Estate,* 88 Cal. 302, 309 [26 Pac. 178 (532)].) A trustee under a will has even a more substantial right to be recognized by the court. He does not become a trustee by virtue alone of the decree of distribution, although his fuller and more complete powers and duties are thus devolved upon him. A testamentary trustee is a devisee under the will, and takes as trustee under the will at the death of the testator. (Civ. Code, sec. 1341; *Estate of O'Connor,* 2 Cal. App. 470, 475 [84 Pac. 317]; *Title Ins. & Trust Co.* v. *Duffill,* 191 Cal. 629 [218 Pac. 14].) He does not derive title from the decree of distribution, which merely declares the title that accrued under and by the will, but from the will itself. (*Western Pac. Ry. Co.* v. *Godfrey,* 166 Cal. 346, 369 [Ann. Cas. 1915B, 825, 136 Pac. 284].)"

Section 1341 of the Civil Code provides: "Testamentary dispositions, including devises and bequests to a person on attaining majority, are presumed to vest at the testator's death."

Section 1342 of the Civil Code contains the following provision: "A testamentary disposition, when vested, cannot be divested unless upon the occurrence of the precise contingency prescribed by the testator for that purpose."

Beginning with the case of *Brenham* v. *Story,* 39 Cal. 179, and reiterated, in principle, at least, in *Estate of Packer,* 125 Cal. 396 [73 Am. St. Rep. 58, 58 Pac. 59], *Smith* v. *Olmstead,* 88 Cal. 582 [22 Am. St. Rep. 336, 12 L. R. A. 46, 26 Pac. 521], *Bates* v. *Howard,* 105 Cal. 173 [38 Pac. 715], and *Estate of Patterson,* 155 Cal. 626 [132 Am. St. Rep. 116, 18 Ann. Cas. 625, 26 L. R. A. (N. S.), 654, 102 Pac. 941], the rule is announced that upon the death of the ancestor the heir becomes vested at once with the property, and his estate is indefeasible excepting only as to liens thereon, if any, then existing. In some of the same cases, notably *Estate of Patterson,* 155 Cal. 626 [132 Am. St. Rep. 116, 18 Ann. Cas. 625, 26 L. R. A. (N. S.), 654, 102 Pac. 941], the law is said to be that "there can be no doubt of the rule that if the estate once vested in the heirs the legislature had no power thereafter by a subsequent law to divest it."

In 5 Cal. Jur. 751, the law on the question is stated as follows: "The power of the legislature to repeal such vested rights as are protected by constitutional guaranties has been repeatedly denied by the court." (See, also, *People* v. *Sac-*

*ramcnto Drainage Dist.,* 155 Cal. 373 [103 Pac. 207]; 5 Cal. Jur. 752, 754; *James* v. *Oakland Traction Co.,* 10 Cal. App. 785 [103 Pac. 1082].) In considering a statute the effect of which, like the statute herein referred to (Stats. 1923, p. 169), might be to impair the obligation of contractual or "vested" rights, it is said in volume 8 of Fletcher's Cyclopedia Corporations, section 5757, that "if a state has permitted a foreign corporation to make contracts or acquire property within its limits, a statute subsequently enacted cannot impair the corporation's right *to enforce such contracts* or *deprive it of its right to the property.* To give the statute such an operation would render it unconstitutional." (Citing cases.)

[1] From the authorities heretofore cited herein it would seem indisputable that the Michigan Trust Company was "entitled to have distribution of the estate made to it"; that as a testamentary trustee it was a devisee under the law and took as trustee under the will at the death of the testatrix (*Estate of Wellings,* 192 Cal. 506, 510 [221 Pac. 628]); that such estate was consequently vested in the Michigan Trust Company as such trustee, and that it could not be divested of such estate by the subsequent act of the legislature nor prevented from executing the trust.

[2] A point is raised as to the legal propriety of the lower court making the order for distribution of the estate to the granddaughters of the decedent at a time when the former appeal from the order denying distribution of the estate to the Michigan Trust Company was pending.

Regarding such asserted authority of the lower court to make such order of distribution, the cases of *Firebaugh* v. *Burbank,* 121 Cal. 186 [53 Pac. 560], *Estate of Garraud,* 36 Cal. 277, and *In re Schedel,* 69 Cal. 241 [10 Pac. 334], in principle hold that an appeal from an order of distribution of an estate has the effect of suspending the execution of the decree.

In *Estate of Garraud,* 36 Cal. 277, the ruling is (syllabus): "A final decree of the probate court making distribut'⸤n of an entire estate is, until reversed or modified on appeal, an investiture of the absolute right and title to the same in the distributees; and a further order of the court making a different disposition of a portion of the estate, made pending an appeal which was perfected from said final decree, is void."

And in *Firebaugh* v. *Burbank,* 121 Cal. 186, 190 [53 Pac. 560, 561], it is said: "In the decree of distribution of November 27, 1893, the court allowed the sum of three thousand five hundred dollars for the services of the plaintiff to the executors up to the date of that decree, and refused to make to the executors any allowance for extraordinary services in the administration of the estate. The appeal by the widow from this decree suspended its execution, and until the determination of that appeal the executors were not only precluded from distributing the estate in accordance with its terms, but were required to retain the property in their care and custody."

But if, in ruling on the principal issue herein, it be determined that the court was without authority to order distribution of the estate to the granddaughters of the testatrix, the question as to the time when such order was made becomes immaterial. This court decided, in *Estate of Wellings,* 192 Cal. 506 [221 Pac. 628], that the Michigan Trust Company was entitled to have the estate distributed to it, and that decision is here affirmed. Under the terms of the will the Michigan Trust Company, and not the granddaughters of the testatrix, was entitled to the distribution of the estate.

[3] It is conceded by the respondents that the trust itself is invalid because the will provides, among other things, that the Michigan Trust Company shall hold the property of the decedent in trust for the following purposes:

"(a) To care for, manage and control the same, to (Myra Josephine Wellings) bargain, sell and convert into money any part or all thereof and to invest and reinvest the same, or the proceeds thereof, in such interest-bearing or income-producing securities or properties as to said trustee, in the exercise of its discretion, may seem best, with all the powers and authority I would possess if living."

Attention is particularly directed to the word "bargan," occurring in the declaration of the purposes of the trust, as well as to the words "with all the powers and authority I would possess if living."

In another paragraph of the will the following provision appears: "Giving and granting unto my said trustee full power and authority to bargain, sell, transfer, and convey, and in any manner dispose of my estate, real or personal, or any part thereof, . . ."

It is urged by the respondents that by the use of the word "bargain" the trustee is authorized to trade or exchange the property of the estate for other property, contrary to the provisions of section 857 of the Civil Code, which limits the purposes for which a trust may be created, and which purposes do not in terms include the right to make exchanges with the trust property. But assuming, without deciding, that if there were a clear expression within the terms of the trust instrument giving to the trustee the power to exchange the trust property, such power would be without the legal purposes of a trust, as provided by section 857 of the Civil Code, it is not certain that the testatrix of the will here in question intended to confer any such powers on the trustee of her will. The word "bargain" is commonly used in conveying property in connection with the word "sell." The ordinary bargain and sale deed contains the phrase that the grantor "does by these presents grant, bargain, sell and convey," etc.; and which words from a practical standpoint mean nothing more than that a sale of the described property is made for cash, or on such terms as may have been agreed upon by the parties to the transfer. In volume 1, Words and Phrases, page 706, the authorities are collected with reference to the use of the word "bargain," expressed singly, also to its use with the word "sale." As there stated: "A bargain is a contract or agreement between two parties, the one to sell goods or land, and the other to buy them. *Hunt* v. *Adams*, 5 Mass. 358, 360 [4 Am. Dec. 68]."

Under the heading "Bargain and Sale" it is said: "A 'bargain and sale' is the transfer and delivery of personal or real property, or chose in action, by one person to another, for a consideration agreed on between them as the value of the property sold. *Brittin* v. *Freeman,* 17 N. J. Law (2 Har.), 191, 231. It 'is a real contract, for a valuable consideration, for passing the title of land from one to another.' *Claiborne* v. *Henderson* (Va.), 3 Hen. & M. 322, 349. It is a real contract, upon a valuable consideration, for passing lands by deed indented. 2d Inst., 672; *Guest* v. *Farley,* 19 Mo. 147, 150. As defined by Blackstone, it is a real contract whereby a person contracts to convey land. Cruise says that it is 'where a contract is made by which a person conveys his lands to another for a pecuniary consideration, in consequence of which a use arises to the bargainee.' *Perry* v. *Price,* 1 Mo. 553, 554. Bargain and sale is a

method of conveyance founded on the statute of uses. 'The bargainor contracts to sell the land, and receives the purchase money. After this he is, in equity, considered as seised of the land to the use of the bargainee, and the statute unites the possession to the use, so that the very instant the use is raised the possession is joined to it, and the bargainee becomes seised of the land. The words of transfer applicable to this conveyance are "bargain and sell," but they are by no means necessary nor material to its operation. There must be a pecuniary consideration; but, if a man for such a consideration covenants to stand seised to the use of another person, a use is thereby raised, which the statute will execute.' *French* v. *French,* 3 N. H. 234, 261.''

It would therefore seem apparent that the testatrix in making the will in question and in providing therein that the trustee might "bargain, sell and convert into money any part" of the estate; or, as provided in a subsequent part of the will, that he might "bargain, sell, transfer and convey, and in any manner dispose of my estate," used the word "bargain" and the other words in connection therewith in the sense of selling the property for cash, or on terms, rather than in the sense of trading or exchanging such property.

The other words to which objection is made, to wit, "with all the powers and authority I would possess if living," clearly refer to the words which precede them; which, as heretofore indicated regarding the word "bargain," apply merely to the right of making sales of the property belonging to the estate.

[4] Other objections by the respondents to the form of the trust as affecting the powers conferred upon the trustee, such, for example, that a trust "for the purpose of sale must be imperative, not merely discretionary," are answered not only by the language of the will itself with reference to the powers of sale, but as well by the indicated rulings by this court in *Estate of Heywood,* 148 Cal. 184 [82 Pac. 755], *Estate of Aldersley,* 174 Cal. 366 [163 Pac. 206], and *Aldersley* v. *McCloud,* 35 Cal. App. 17 [168 Pac. 1153].

In the case entitled *Estate of Heywood,* 148 Cal. 184 [82 Pac. 755], it appears that "the will provided: 'In case it may be necessary *or in case it be deemed advisable by my trustees* . . . they are hereby authorized to sell at any time the said . . . property . . . and to reinvest the proceeds in

income-paying real estate or other safe income-paying securities to the end that my wishes herein expressed may be carried out for the maintenance and protection of my said wife and my adopted daughter.'"

In deciding in that case that the will was valid, no great attention was devoted by the court to the particular point here under consideration. Nevertheless, among other things, the court said:

"In construing testamentary dispositions of property it is a cardinal rule that a liberal construction should be given to them and all reasonable intendments indulged in, with a view of sustaining the purpose which it is disclosed the testator had in view. No particular form of expression is necessary to constitute a valid trust. It is sufficient that from the language used the intention of the testator is apparent, and that the disposition in trust which he endeavors to make of his estate is consistent with the rules of law. The intent of the testator is the matter for primary consideration, and it is immaterial what method of expression is employed as long as that intention can be ascertained. As said in Hill on Trustees (p. 101), 'it is one of the fixed rules of equitable construction that there is no magic in particular words'; and this court has said that 'Of course, it is a fundamental principle that a construction of a will favorable to testacy will always obtain when the language used reasonably admits of such construction, and that it will not be held to contain a void trust, unless the invalidity of the trust is beyond question . . . and cannot be reasonably construed otherwise' (*Estate of Dunphy*, 147 Cal. 95 [81 Pac. 315].)"

In the case of *Aldersley* v. *McCloud*, 35 Cal. App. 17 [168 Pac. 1153], a trust provision in a will similar to that here being considered was held valid.

[5] It is suggested by respondents that under the clause of the will whereby the trustee is given *"all"* the powers and authority that the decedent would have if living the trustee might make "extensive and substantial improvements" on the trust property, which authority is not contemplated by the provisions of section 857 of the Civil Code. No authorities are cited by respondents to sustain their contention in this regard. Section 857 of the Civil Code does not purport to enumerate the various rights which a trustee may possess under a general authority such as may be provided in a will creating a trust like that here under consid-

eration. A similar question was presented in the case of *Estate of Heywood,* 148 Cal. 184 [82 Pac. 755]. With reference thereto the court disposed of the question in the following manner:

"In order to give countenance to the contention of appellant it would be necessary to interpolate language into the subdivision directing the trustees to do what confessedly the subdivision does not directly prescribe they shall do, and, having made the interpolation, then declare the trust invalid as a trust 'to divide.' This a court will never do. [6] It is only when the language actually used by the testator will admit of no other reasonable construction than that it creates an invalid trust that a court will declare this to be its effect."

And see generally in this connection, with reference to the validity of the trust, *Estate of Dunphy,* 147 Cal. 95 [81 Pac. 315].

It follows that each of the orders from which an appeal is taken herein should be reversed. It is so ordered.

Waste, J., Lennon, J., Lawlor, Acting C. J., Richards, J., Shenk, J., and Seawell, J., concurred.

Rehearing denied.