[S. F. No. 4331. Department Two.—November 10, 1905.]

In the Matter of the Estate of FRANKLIN HEYWOOD, Deceased.

TRUST CREATED BY WILL—CONSTRUCTION IN FAVOR OF VALIDITY—INTENTION OF TESTATOR.—Where a trust is created by will, a liberal construction should be given to its terms, with a view to sustaining the intention of the testator, which is the matter for primary consideration. No particular form of expression is necessary to make the trust valid; and it is sufficient that, from the language used, the intention of the testator is apparent, and that the disposition in trust which he endeavors to make is consistent with the rules of law. A construction of the will in favor of testacy will obtain when the language reasonably admits of it; and it will not be held to contain a void trust unless its invalidity is beyond question, and the will cannot be reasonably construed otherwise.

ID.—TRUST TO "MANAGE" PROPERTY—POWER IMPLIED.—Although section 857 of the Civil Code does not mention the word "manage" in connection with the trusts therein authorized, yet it is the duty of the trustee to hold the trust property and administer it; and where, if the trust provision had said nothing about managing the property, the power of the trustees to manage it for the purpose of carrying out the valid provisions of the trust would be necessarily

implied, no provision of section 857 was violated in expressly conferring it.

ID.—MONTHLY PAYMENTS TO WIFE AND DAUGHTER—CONSTRUCTION OF TRUST—PAYMENTS OUT OF INCOME.—In determining whether stated monthly payments to the wife and daughter of the testator were to be paid by the trustees out of income only, and not out of the *corpus* of the estate, resort should be had to all the provisions of the trust bearing thereon, and where they show an anticipated excess of income over such payments and clearly indicate the intention of the testator that the property should be so invested in income-paying secureties that the wishes of the testator may be carried out for the maintenance and protection of the wife and daughter, it is his manifest intention that the payments to them should be made from the income only.

ID.—DIVISION OF RESIDUE OF TRUST ESTATE—DUTY NOT IMPOSED UPON TRUSTEES—DEVISE TO BENEFICIARIES.—Where the will imposed no duty upon the trustees to divide the trust estate after the termination of the trust upon the death of his wife, and provided that one half of the remainder should "vest absolutely in his daughter," and that the remaining one half should "vest absolutely" in certain relatives named, and to meet the contingency of the daughter dying before the wife without issue provided that in such case the "whole residue of the estate shall be divided" among certain relatives, the use of the word "divided" in such connection is not inconsistent with an intention to devise the property to the substituted beneficiaries, but is designed rather to express such intention in view of the other absolute devises.

ID.—INCIDENTAL TRUSTS NOT AFFECTING VALIDITY OF PRIMARY TRUST.—Without determining whether the trust to apply the excess of income in the improvement of unimproved property or to invest it in income-producing properties is or is not valid, it is no part of the primary trust involved on this appeal, but is wholly separable therefrom, and cannot in any event affect its validity.

APPEAL from an order and decree of the Superior Court of the City and County of San Francisco denying a petition for partial distribution of the estate of a deceased person. Frank H. Kerrigan, Judge.

The facts are stated in the opinion of the court.

Timothy J. Lyons, for Appellant.

Powell & Dow, J. B. Reinstein, W. P. Johnson, Sullivan & Sullivan, Theo. J. Roche, and Cary Howard, for Respondents.

LORIGAN, J.—This is an appeal from an order and decree denying a petition for partial distribution.

The will of Franklin Heywood, deceased, which was duly admitted to probate in the superior court of the city and county of San Francisco, contained, among others, the following provisions: "Third. I give, bequeath, and devise to my executors hereinafter named as trustees eighteen hundred and seventy-five (1875) shares of the capital stock of the Gualala Mill Company, a corporation, and all of the residue of my real and personal property, in trust for the following uses and purposes, to wit: (1) To manage said capital stock and property and to collect the income, issues, and profits thereof, and to pay to my said daughter during the natural life of my wife, Agnes B. Heywood, the sum of one hundred and fifty dollars ($150) per month for my said daughter's maintenance and support. (2) To pay to my wife, Agnes B. Heywood, during her natural life the amount specified in the articles of separation made between us on the 10th day of July, 1890, viz., one hundred and fifty dollars ($150) per month. (3) Upon the death of my wife one-half (½) of the residue of my estate shall vest absolutely in my said daughter and the remaining one-half (½) shall vest absolutely as follows, to wit: One seventh (1-7) thereof in my brother William B. Heywood or in case of his death in his son William H. Heywood, and the remaining six-sevenths (6-7) of said one-half (½) in my brothers and sister and nephew and niece, namely, Charles one-seventh (1-7) thereof, Samuel one-seventh (1-7) thereof, Walter one-seventh (1-7) thereof, Harry one-seventh (1-7) thereof, Hattie G. Hunt one-seventh (1-7) thereof, and in Charles Walter Philips and Irene Moet Philips, children of Georgiana Philips, the remaining one-seventh (1-7) thereof, or, in case of death, their respective children by right of representation. (4) In case my said daughter should die before my said wife without any child or children, then the whole of said residue shall be divided among my said brothers and sister and niece and nephew in the proportions named in the last preceding subdivision. (5) Any excess of income after such monthly payments are made to my said wife and daughter, shall be used in the improvement of any of my unimproved real property or invested in some income-paying property. Fourth. In case it may be necessary or in case it may be deemed advisable by my trustees hereinafter named, they are hereby authorized to sell at any

time the said capital stock of the said Gualala Mill Company or any other property belonging to my estate and to reinvest the proceeds in income-paying real. estate or other safe income-paying securities to the end that my wishes herein expressed may be carried out for the maintenance and protection of my said wife and my adopted daughter.''

The appellant, Agnes M. Heywood, is the daughter of said deceased mentioned in the provisions of said will, and petitioned the said superior court, under section 1663 of the Code of Civil Procedure, which allows the distribution of an estate before final settlement after the lapse of one year from the issuance of letters testamentary for distribution to her of the ''residue'' of the estate of testator mentioned in clause ''third'' of said will, which we have quoted, upon the theory that the trust attempted to be created thereby was void, that by reason of such invalidity the testator died intestate as to said ''residue,'' and that petitioner was entitled to have it distributed to her as his heir at law. General demurrers to the. petition were interposed and sustained, and from a decree entered thereupon denying her petition for distribution the petitioner appeals.

The sole question presented for consideration in the lower court and now upon this appeal is whether or not a valid trust was created by the third clause of said will. The position of appellant with reference to said trust clause is that none of the purposes for which the residue of the estate is thereby devised in trust are authorized by section 857 of the Civil Code, or, to be more precise, it is contended by counsel for appellant that there is no authority in the section for the creation of a trust to ''manage'' the trust fund or ''to pay'' the annuities, as provided for in the first and second subdivisions of the trust clause in question, or to ''divide'' the residue of the trust fund at a certain time and upon a specified contingency, as in the fourth subdivision, or to use the ''excess of income'' in improving real property, or in making new investments, as subdivision 5 provides that the trustees shall do. We are satisfied, from a fair and careful consideration of the trust clause in question, that there is no merit in any of these objections urged by appellant, as far as we deem it necessary on this appeal to consider them. They amount, in our judgment, more to criticisms upon the language employed

by the testator in framing the trust than to sound objections against the validity of the trust provisions themselves. In construing testamentary dispositions of property it is a cardinal rule that a liberal construction should be given to them and all reasonable intendments indulged in, with a view of sustaining the purpose which it is disclosed the testator had in view. No particular form of expression is necessary to constitute a valid trust. It is sufficient that from the language used the intention of the testator is apparent, and that the disposition in trust which he endeavors to make of his estate is consistent with the rules of law. The intent of the testator is the matter for primary consideration, and it is immaterial what method of expression is employed as long as that intention can be ascertained. As said in Hill on Trustees (p. 101), "it is one of the fixed rules of equitable construction that there is no magic in particular words"; and this court has said that "Of course, it is a fundamental principle that a construction of a will favorable to testacy will always obtain when the language used reasonably admits of such construction, and that it will not be held to contain a void trust, unless the invalidity of the trust is beyond question . . . and cannot be reasonably construed otherwise." (*Estate of Dunphy*, 147 Cal. 95, [81 Pac. 315].)

Examining now, in the light of these general principles, the several points made by appellant against the validity of the trust clause, it is first insisted that section 857 of the Civil Code, providing what trusts may be created, does not authorize a trust to "manage" a trust fund. It is true that the word "manage" is not mentioned in the section, but there is no reason why it should be. The section was designed to provide the purposes for which valid trusts might be created, not to prescribe the form of expression which was to be used in doing so. The word "manage" means to direct, control, govern, administer, or oversee. (19 Am. & Eng. Ency. of Law, p. 706.) When a trust is created, the whole estate is vested in the trustee subject to the trust. (Civ. Code, sec. 863.) And it is the duty of the trustee to hold the property and administer it. Subdivision 3 of section 857 provides that a trust may be created "to receive the rents and profits of real property and pay them to or apply them to the use of any person. . . ." The trust in the first and second subdivisions

of clause third of the will was created for this purpose, and the trustees were directed to manage the trust property to fulfill it. It cannot well be perceived how the "income, issues, and profits" referred to in those subdivisions could be derived from the trust estate, unless the trustees managed it so as to produce them. If the trust provision had said nothing about managing the property, the duty would, nevertheless, have been cast by law upon the trustees to do so for the purpose of carrying out the terms of this trust provision. The right to manage the trust property would spring from the devise itself to the trustees as necessary to carry out the purposes of the trust declared whether the will expressly conferred such power on the trustees or not. And as the power to manage would be implied, if not expressly granted, no provision of section 857 was violated in expressly conferring it.

Nor do we deem the second objection tenable. This is that the direction to pay to the wife and daughter of testator one hundred and fifty dollars per month is invalid because such payments are not limited by the terms of the trust to the "rents and profits" as the source alone from which payments shall be made, as provided in subdivision 3 of section 857, but from the general language used the capital or *corpus* of the trust property may be resorted to for such payments. Considered alone, the subdivisions of the trust clause directly providing for such payments may be open to this objection, but in ascertaining the intention of the testator as to the source from which said payments shall be made we must not restrict ourselves solely to an examination of these particular subdivisions of the will. Resort must be had to all the provisions of the will which tend to disclose his intention in that regard. When we do so, there is no room for construction left as to what his intention in that respect was. By his will he directs, first, that the trustees shall manage the property devised, and collect the "income, issues, and profits," and pay the annuitants their monthly allowance, and then provides that "any excess of income after such monthly payments are made to my wife and daughter shall be used in the improvement of any of my unimproved real property or invested in some income-paying property." By the fourth clause he further provides that "in case it may be necessary, or in case it may be deemed advisable by my trustees, . . . they are hereby

authorized to sell at any time the said . . . property . . . and to reinvest the proceeds in income-paying real estate or other safe income-paying securities to the end that my wishes herein expressed may be carried out for the maintenance and protection of my said wife and my adopted daughter." These provisions clearly indicate that it was the intention of the testator that the payment of the annuities to his wife and daughter should be made from the income only of the trust property—the rents and profits. In the face of these provisions, so explicitly indicating this purpose, it would be doing violence to the intention of the testator to reach any other conclusion.

It is next insisted that subdivision 4 of the trust clause, which provides that the "whole of the residue of the trust estate shall be divided" among his brothers, sister, niece, and nephew, in the event that his daughter dies before his wife, is void, and that a trust "to divide," which counsel for appellant contends is a trust to partition, or convey upon partition, the property of the estate, is not within the purposes for which a valid trust may be created under section 857 of the Civil Code, and relies upon the decision in *Estate of Fair*, 132 Cal. 535, [60 Pac. 442, 64 Pac. 1000, 84 Am. St. Rep. 70], as particularly supporting his contention. We do not think the principle of the decision in the Fair case has any application. Under the trust provisions there involved the testator devised his property to trustees with specific directions that they should "transfer and convey" to the beneficiaries. This was the only method prescribed by him for vesting title, and his intention that the beneficiaries should take title by conveyance only from the trustees was repeatedly reiterated in his will. His intention in this regard, in the opinion of the majority of the court, was so clearly and repeatedly expressed that there was no possible room for construing the language of the trust provisions as making a direct devise to the beneficiaries, or as evidencing an intention to do so. The provision of the will at bar under consideration is radically different from the provisions construed in the Fair case. It does not provide that trustees shall transfer or convey the trust property to the relatives designated as the only method whereby title to the trust property shall pass to them should the specified contingency happen. In fact, no active

duty is cast upon the trustees at all under this section. They are not mentioned in it. No express direction that the trustees shall "divide" the trust property is contained in the subdivision, nor is there any direction in any other provision of the will that they shall make any transfer, conveyance, or division of the trust estate among the beneficiaries, or that they shall do anything at all so as to vest title to it in them.

In order to give countenance to the contention of appellant it would be necessary to interpolate language into the subdivision directing the trustees to do what confessedly the subdivision does not directly prescribe they shall do, and, having made the interpolation, then declare the trust invalid as a trust "to divide." This a court will never do. It is only when the language actually used by the testator will admit of no other reasonable construction than that it creates an invalid trust that a court will declare this to be its effect. This, however, is far from being the character of the language used in the subdivision in question. Taking that language and construing it in connection with the other provisions of the will, notably subdivision 3 immediately preceding it, we think it was undoubtedly the intention of the testator in using the expression that "the whole of said residue shall be divided among" his relatives therein designated to directly devise the share of the estate otherwise going to his daughter to those relatives in the event of her death. By his will the testator provided for the existence of a trust solely during the lifetime of his wife, the income of the trust property to be devoted to the payment of annuities to herself and his daughter during his wife's lifetime, the only active trust duties devolving upon the trustees being to manage the estate so as to secure and expend the income derived from it. By section 3 of the trust clause, upon the death of his wife, he provided that one half the remainder of his estate "should vest absolutely in his daughter," and that the remaining one half should "vest absolutely" in his relations therein named. Under this subdivision the whole residue of his estate was vested in the beneficiaries respectively named therein by the terms of the trust itself. No provision was made for any division by the trustees or any other action upon their part relative to the estate so absolutely devised. Subdivision 4, immediately following (the one in question here), was undoubtedly designed

to meet the contingency of his daughter dying before his wife without issue, in which event he intended that the half of his estate previously devised to her should go to the devisees to whom the other half was devised, and that there should be thus vested in them the whole residue of his estate. It was not contemplated that the absolute devise of one half which he had previously made to the beneficiaries other than his daughter should be disturbed in the event of her death, but only that, in such event, the prior disposition in their favor should be increased by vesting in them, in the same proportions as they took their own half, the share to which she would be entitled if she survived the testator's wife. This would necessarily vest in these beneficiaries the whole of the residue, and this was undoubtedly the intention the testator had in view when he provided in section 4 that it should "be divided" among them "in the proportions named in the last preceding subdivision"—subdivision 3. The language used was simply declaratory of his intention that, should the contingency provided for occur, the estate directly devised to his daughter should vest directly in the beneficiaries previously named. It is true that the testator might have used more apt words to disclose his intention to directly devise his estate to the other beneficiaries should his daughter die, but a declaration that it "shall be divided" among them is not by any means indicative of a different intention. If these words were used in a will free from trust provisions, they would undoubtedly be treated as words of devise. And we think they must be taken here as indicating a similar purpose, particularly when we consider that no express direction is given to the trustees to divide the trust estate so as to invest the beneficiaries with title to it, and when we further consider that the previous devise to the daughter, which would be affected by the happening of the contingency, was direct and absolute, and that there is nothing in the subdivision in question or in any other portion of the will to indicate that the testator intended, should the contingency happen, that the substituted beneficiaries should take in any other manner than by a direct devise similar to that by which, in the preceding subdivision, he had disposed of his whole estate.

In the case of *Estate of Dunphy*, 147 Cal. 95, [81 Pac. 315], a trust clause in the will there under consideration provided

that upon the death of one of the beneficiaries one fifth of the principal of the estate "shall be transferred and distributed" as such beneficiary might by will direct. There was no express direction to the trustees to transfer or distribute. It was insisted that the language used meant that the title to such fifth could only pass by the trustees' conveyance, and that it was a trust to convey and void under the decision in the Fair case. This court held otherwise, and declared the provision valid, holding that the use of these words evidenced no intention that the trustees should execute a conveyance, and that the provision contained no direction at all to the trustees to transfer, distribute, or convey, nor did it interfere with the apparent intention of the testator that the disposition of the trust estate authorized by the beneficiary to be made should operate as a direct devise. As the direction in the Dunphy case that a portion of the trust estate "shall be transferred and distributed" did not amount to a trust to convey, but operated as a direct devise, certainly the provision in the present trust that the "whole of said residue shall be divided" did not create a trust directing the trustees to divide or transfer title by conveyance on partition, but operated as a direct devise in favor of the beneficiaries. We are satisfied that it was the intention of the testator, in using the language in subdivision 4 that the "whole of said residue shall be divided," to indicate the persons and proportions in which, in the event of his daughter's death, the share otherwise absolutely devised to her should vest, and that no trust of any kind was imposed upon the trustees under said provision.

The foregoing are the only points made by appellants which in our judgment call for disposition upon this appeal. The point that subdivision 5 of the trust clause, directing the trustees to use the excess of income after payment of the annuities in the improvement of unimproved property of the estate, or to invest it in some income-paying property, is invalid, as not within any of the trusts provided for in section 857 of the Civil Code, we do not think we are at this time called on to determine. It is no part of the primary trust, the validity of which is alone involved on this appeal. It is a provision entirely separable from it. If it were invalid, it would not affect the primary trust which we have determined

CXLVIII Cal.—13

to be valid. It is quite obvious that the primary trust would be unaffected and the primary purpose of the testator accomplished, even if the direction in the subdivision should be held void. It is clearly not so inextricably interwoven, or so essentially a part of the trust scheme, that all the other trust provisions would fall if it could not be sustained. Whether there will, in fact, be any excess of income is purely a matter of conjecture, a mere contingency which may never arise, and the uncertainty of which could not affect the primary trust. For these reasons, and having in view the character of proceeding here involved and the question presented on this appeal, we do not deem it necessary to determine its validity. This proceeding in the lower court was inaugurated to obtain a partial distribution of the estate, on the theory that the primary trust created by the testator was void. We have determined that this is not so. Having disposed of that question, it appears to us that we have disposed of the only vital point involved in the case. If we were to decide that subdivision 5 attempted to create an invalid trust as to the excess of income, it would be of no advantage to appellant. As the primary trust is valid, the decree denying her application would still have to be affirmed. Aside from this, the validity of this subdivision seems to be a moot question at this time and under this proceeding, whereby appellant seeks a distribution of property. There is nothing in the record to show what income the estate receives, or that there is now any excess of income, or that there is any probability that there will be any such excess. In the nature of things, this could only appear when the matter of final distribution of the estate comes up in the superior court, and it is possible that then the trust may be practically terminated. At that time and properly before that tribunal, if it shall be necessary to do so, the validity of this subdivision of the will can be passed on. For the reasons indicated, we do not think its validity need now be considered, and we do not do so.

The order and decree appealed from are affirmed.

McFarland, J., and Henshaw, J., concurred.

Hearing in Bank denied.