[Civ. No. 7039.   Second Appellate District, Division Two.—February 10, 1930.]

In the Matter of the Estate of CHARLES B. INGRAM, Deceased.   ESAU A. INGRAM et al., Appellants, v. GEORGE W. ADAMS et al., Respondents.

G. R. Dexter, G. S. Pinney and Howard B. Henshey for Appellants.

John C. Hamm and Overton, Lyman & Plumb for Respondents.

BURNELL, J., *pro tem.*—Charles B. Ingram died about July 24, 1924, leaving a holographic will which was admitted to probate September 19, 1924. While the word "executor" did not appear in the will, the instrument did contain the following language: "I hereby appoint George W. Adams of the firm of Adams, Adams and Binford my attorney for the purpose of seeing that my desires, requests and bequests are fully carried out, and that the court in consultation with my attorney appoint a competent Trustee to hold Title and distribute my estate as hereinafter set out, and for such other purposes as shall be necessary in carrying the intentions of my last will." Construing this as equivalent to the nomination of an executor the court appointed Mr. Adams as such. Thereafter a petition was filed by one of the heirs under the provisions of section 1664 of the Code of Civil Procedure, "praying the court to ascertain and determine the rights of all persons to said estate and all interests therein, and to whom distribution thereof should be made," and following the entry of the decree establishing proof of the service of notice to all interested persons as by that section provided, certain of the heirs filed a pleading entitled "Complaint under section 1664, C. C. P." Upon the issues raised by this complaint and the various

answers thereto the court made its findings and caused to be entered the judgment and order from which this appeal is taken.

Appellants' first point is that the court had no jurisdiction to order distribution of the estate under proceedings had pursuant to the code section referred to. Inasmuch as the distribution of the estate was the only relief prayed for in the complaint (and consented to by the heirs who filed answers), this point cannot be said to be urged with very good grace. However, it is disposed of by the statement that the court did not, by the judgment appealed from, attempt to order a distribution, but, on the contrary, distinctly refused to do so. One of the findings is, "that no settlement of the final account of the executor has been made, and the estate of said decedent is not now ready for distribution," and the language of this finding is repeated in the judgment, immediately preceding the last paragraph, which reads: "The petition for distribution is denied. The stipulation for distribution is dismissed . . . "

It is urged by appellants that no valid trust was created by the terms of the will and that the court had no jurisdiction to appoint a trustee. Omitting the first paragraph as irrelevant to the subject under discussion and the second as having already been quoted *ante,* the will is as follows:

"That no distribution of my estate be made (except as hereinafter set out) for a period of Twenty years.

"Said Trustee is hereby directed and instructed to sell and dispose of my home and furnishings located at 1601 Fletcher Avenue South Pasadena California (except the bedding, clothing, china of all kinds useful or ornamental, pictures, oil paintings, fancy work, hand needlework, jewelry and silverware) said exceptions to be disposed of as hereinafter directed, that the proceeds therefrom, together with the proceeds from life insurance, and if necessary from the sale of stock now held in the Central Manchester Realty Company, a corporation a first mortgage note of Fifteen Hundred Dollars and a Trust Deed note of seventeen hundred dollars, both signed by M. Nannar a first mortgage note of Twelve Thousand Dollars signed by the Homeland Investment Company, a Corporation, and the proceeds to be used to liquidate any and all legal and outstanding indebtedness due or to become due or arising from time to time

by or through the carrying out of my last will and any cash
bequests and by cash bequests I mean there shall be paid to
my brother Joseph M. Ingram, One hundred dollars monthly
each and every month during his natural life until such
time as the income from my Estate or his interest therein
shall be sufficient to make such an amount, to John S. and
Florence C. Boster the sum of Five Thousand Dollars each,
to George H. Briggs the sum of Five Thousand Dollars in
installments of One Hundred dollars monthly until said
amount be paid in full unless death ensues prior to or dur-
ing said period then said payments to cease.

"After the liquidation of my obligations, bequests, I de-
sire that the remainder of my estate and the income there-
from be distributed as follows, Seventy-five per cent to my
legal heirs and Twenty-five per cent to charitable purposes
as hereinafter set out and directed.

"My legal heirs I mean Joseph M. Ingram and the heirs
of the body of his late wife Ida B. Ingram but does not in
any event include his daughter Arra A. sands or heirs of
her body. The heirs of Sister Sarah Ann Boster, my sister
Mary E. Thrasher during her natural life and then to the
heirs of her body. To Esau A. Ingram during his natural
life and then to my natural heirs as herein set forth. And
to the natural heirs of my sister Deborah M. Boster being
the heirs of her body.

"In recognition of the many, many virtues and the high
esteem in which I held my late wife, May B. Ingram and
her faithfulness during life to every trust and her desire
to aid the poor and needy, and after the payment to all my
legal obligations and cash bequests, I desire and do hereby
direct that Twenty-fiver per cent of all my income and
finally of the residue of my estate be directed to charitable
purposes such as Childrens homes, childrens orphanages or
hospitals and homes for the aged and shall be distributed
under the direction of the Oneonta Chapter of the daughters
of the American Revolution of south Pasadena California or
their authorized board of trustees and that said organiza-
tion or governing board be the sole judge as to how the dis-
tribution shall be make and the only report to be made to
the court or trustee shall be to show that the money has
been by them properly distributed by the Society or govern-
ing board in accordance with my direction

"I desire and direct the personal property referred to in the exception clause as to bedding, clothing, china, pictures, paintings, fancy work, silverware and jewelry be turned over by the Court to John S and Florence C Boster as their separate, and exclusive property and that no accounting therefore shall be required.

"I further direct that should any of my heirs objecting too or commencing any action against the carrying out of my last Will and Testament shall be disinherited and shall receive no share of the income or residue of my estate and such portion or portions shall be distributed to the then remaining loyal heirs."

The essentials for the creation of a trust are thus set forth in section 2221 of the Civil Code: "Subject to the provisions of section 852, a voluntary trust is created, as to the trustor and beneficiary, by any words or acts of the trustor, indicating with reasonable certainty: 1, An intention on the part of the trustor to create a trust; and, 2, The subject, purpose and beneficiary of the trust." This statutory provision is but a restatement of the rule that to constitute a trust there must be a concurrence of, first, words sufficient to create it, second, a certain subject, and third, a definite object, by which is meant "sufficient language to sever the legal from the equitable estate, to clearly identify the beneficiaries and the property out of which the trust is to take effect" (Thompson on Wills, sec. 336; *Dingwell* v. *Seymour,* 91 Cal. App. 483, 508 [267 Pac. 327]).

"An express trust may be created in a will by any form of words which shows the testator's intention to give the legal interest in the property devised to one, and the equitable interest in the same property to another." (2 Page on Wills, sec. 1040; *Meek* v. *Briggs,* 87 Iowa, 610 [43 Am. St. Rep. 410, 54 N. W. 456].)

Tested by these rules Mr. Ingram's will clearly indicates an intention to create a trust. This is manifest by his request for the appointment of a trustee, by the provision that no distribution (with certain exceptions) be had for twenty years, by the direction to the trustee who should be appointed to sell the home and its furnishings (again with certain reservations) and to use the proceeds of such sale, together with those from the testator's life insurance, and, if necessary those from the sale of certain securities for the

liquidation of "any and all legal and outstanding indebtedness due or to become due or *arising from time to time* by or through the carrying out of my last will and any cash bequests," by the direction for the payment of certain legacies in monthly payments during the life of the legatees and by the provision for direction of twenty-five per cent of the *income* of the estate "and finally of the residue" thereof to charitable purposes. (Italics ours.) The *subject* of the trust is of course the property left by the testator at his death and the beneficiaries are those whom he names as his heirs, together with all of those persons coming within the class designated as "heirs of the bodies" of certain named beneficiaries and including as well those charities which should be designated by the board of trustees of the Oneonta Park Chapter of the Daughters of the American Revolution. It is true that the testator did not always make use of the terminology which a lawyer would have employed in drafting a will. For example, he uses the word "distributed" in the third of the paragraphs last above quoted where "apportioned" or "devised" would have better expressed his apparent meaning, but ▪ while a disclosed intention to create a trust is indispensable it is not essential that such intention be manifested by express terms (25 Cal. Jur. 280, 286; *Estate of Haines,* 150 Cal. 640 [89 Pac. 606]; *In re Shaw's Estate,* 198 Cal. 352 [246 Pac. 48]). It is immaterial that the language used is inartificial, ungrammatical and devoid of technical terms (Id., and see, also, *Estate of Dunphy,* 147 Cal. 95 [81 Pac. 315]), provided the intention is evident from a reasonable construction of the document as a whole (*Estate of Heywood,* 148 Cal. 184 [82 Pac. 755, 757]).

▪ If Mr. Ingram did not contemplate the creation of a trust why the request for the appointment of a trustee "*to hold title*"? (Italics ours.) "Without doubt a valid and effectual trust is created where property is conveyed by an instrument which expressly discloses that the grantee shall hold title for the benefit of another" (25 Cal. Jur. 284).

▪ Again, the provision for payment to Joseph M. Ingram of "one hundred dollars monthly during his natural life" and for the payment to George H. Briggs of "the sum of five thousand dollars in installments of one hundred dollars monthly until said amount be paid in full unless death en-

sues prior to or during said period then said payments to cease,'' brings the will within the rule that ''a trust will be implied from an express authorization to the executor to pay certain annuities, as this would be impossible unless the executor has a trust estate in the property. The same result will follow from a provision giving directions to manage, dispose of or distribute property for the benefit of others.'' (Thompson on Wills, sec. 341.)

On this branch of the argument appellants devote most of their brief to an attempt to show that no trust at all was created by the will, they do not, with one exception, attack the validity of the trust as such. ■ The exception referred to is the argument that if the decedent intended to create a trust he also intended to provide therein that there should be an accumulation of income in violation of sections 723 and 724 of the Civil Code. In this connection it is to be noted that they do not claim that the court below so construed the will as to impute to the testator an illegal attempt to provide for accumulation of income or that by its decree it provided for such accumulation. The language of the will does not require the construction which appellants place upon it. In at least three instances it is reasonably apparent that the testator intended a segregation of the income from the *corpus* of his estate and the payment thereof to the objects of his bounty. We refer to the provision for the monthly payments to his brother Joseph ''during his natural life until such time as the income from my estate or his interest therein shall be sufficient to make such an amount,'' to the direction that twenty-five per cent ''of all my income'' be devoted to charitable purposes and to the clause depriving any heir who should contest the will of his share ''of the income or residue of my estate.'' It is a well-settled rule of law that a will should receive such construction as will render it valid and enforceable if such construction is possible. In the case of *Toland* v. *Toland*, 123 Cal. 140 [55 Pac. 681], it is said: ''In the will of Mrs. Toland there are no terms which forbid a sale or place the land beyond the power of those having interests therein to unite and convey an absolute interest in possession. The testatrix does not give such direction, and the language used by her is susceptible of a different construction, and it is one of the cardinal rules of interpreting an instrument to

give it such construction as will make it effective rather than void.'' Again, in *Estate of Heywood, supra,* the court says: ''The intent of the testator is the matter for primary consideration, and it is immaterial what method of expression is employed as long as that intention can be ascertained. As said in Hill on Trustees (p. 101), 'It is one of the fixed rules of equitable construction that there is no magic in particular words'; and this court has said that 'Of course, it is a fundamental principle that a construction of a will favorable to testacy will always obtain when the language used reasonably admits of such construction, and that it will not be held to contain a void trust, unless the invalidity of the trust is beyond question . . . and cannot be reasonably construed otherwise.' (*Estate of Dunphy,* ·147 Cal. 95 [81 Pac. 315].)'' (See, also, *Estate of Wellings,* 197 Cal. 189 [240 Pac. 21].)

The contention that the court was without jurisdiction to appoint a trustee is based in part upon the premise that the matter of such appointment was not within the issues. Appellants urged that ''neither at the time of the filing of the petition under section 1664, nor at the time of the hearing thereon on the 17th day of February, 1928, was it considered by either the heirs or their attorneys that the question of the jurisdiction or right of the court to declare a trust or appoint a trustee, in any event, would be before the court as an issue. . . . '' Apart from the fact that the answer of one of the defendants, Oneonta Park Chapter of the Daughters of the American Revolution, specifically presented this point by requesting the appointment of a trustee, the provisions of section 1664 required the court, in a proceeding brought thereunder, to ''determine the heirship to said deceased, the ownership of his estate, and the interest of each respective claimant thereto or therein, and persons entitled to distribution thereof.'' As said in *Whalen* v. *Smith,* 163 Cal. 360 [Ann. Cas. 1913E, 1319, 125 Pac. 904], referring to a proceeding under this section of the code: ''It is a determination, first, of the persons entitled as heirs, devisees, or legatees, or as their successors, if any have died; and, second, the interest of each one in the estate of the decedent.'' To the same effect is *Estate of Ross,* 180 Cal. 643 [182 Pac. 755]. The court having determined that the will created a trust and hence

that the interests of certain of the heirs were those of beneficiaries thereunder it became its duty irrespective of any request by the interested parties or any of them to appoint a trustee. ''The Superior Court, while sitting in matters of probate, is the same as it is while sitting in cases in equity, in cases at law, or in special proceedings; and when it has jurisdiction of the subject-matter of a case falling within either of these classes, it has power to hear and determine, in the mode provided by law, all questions of law and fact the determination of which is ancillary to a proper judgment in such case." (*In re Burton*, 93 Cal. 459 [29 Pac. 36, 37].) ''Where a trust has been created by will, the validity of the trust is necessarily involved in the question of distribution; for if invalid, the bequest fails. (*Estate of Walkerly*, 108 Cal. 660 [49 Am. St. Rep. 97, 41 Pac. 772].) Hence, as necessary to distribution, 'it is within the province of the probate court to define the rights of all who have legally or equitably any interest in the property of the estate, *derived from the will.*' '' (*More* v. *More*, 133 Cal. 489 [65 Pac. 1044, 66 Pac. 76].) As held in *Estate of Crooks*, Myr. Prob. Rep. 247: ''If a trust is attempted to be created, this court must determine how far the attempt is successful, what is the trust, who is the trustee, and who are the beneficiaries. . . . '' ▮ When a trust is created but no trustee has been appointed or when there exists a vacancy in the trusteeship, it is the duty of the Superior Court to make such appointment (Civ. Code, secs. 2288, 2289). This the court did in the case before us.

The judgment is affirmed.

Works, P. J., and Thompson (Ira F.), J., concurred.