The Honorable Shane Broadway State Senator
201 Southeast Second Street Bryant, Arkansas 72022-4025
Dear Senator Broadway:
This is my opinion on your questions about Saline County's existing nighttime juvenile curfew ordinance and a proposal to amend it to apply during the day. Your questions are:
 1. Does a county have the authority under Arkansas law to enact a curfew, either daytime, nighttime, or both, for juveniles?
 2. Does the proposed ordinance, which would amend Saline County's current ordinance by establishing a daytime curfew for juveniles, offend either the Arkansas or U.S. Constitution?
 3. If a county has the authority to enact a curfew ordinance, can the ordinance be enforced inside the limits of each city within the county or would the ordinance only be enforceable in the unincorporated areas of the county?
In my opinion, an Arkansas county has clear authority to enact a nighttime juvenile curfew. I believe a county has authority to enact a daytime curfew as well, but there are plausible arguments to the contrary. For the reasons described below, I cannot confidently opine on the proposed ordinance's constitutionality but, if enacted, it will be entitled to a presumption of constitutionality. With respect to your third question, it is my opinion that, absent a municipality's consent and agreement, a county has clear and unequivocal authority to enforce its juvenile curfew ordinance only in unincorporated areas. *Page 2 
RESPONSE
Question 1 — Does a county have the authority underArkansas law to enact a curfew, either daytime, nighttime, or both, forjuveniles?
A predecessor in this office opined that a city may enact a juvenile curfew. See Op. Att'y Gen. 89-065. The opinion cited a statute empowering cities to "[p]revent injury or annoyance . . . from anything dangerous, offensive, or unhealthy and cause any nuisance to be abated . . . [and] [p]revent any riots, noise, disturbance, or disorderly assemblages. . . ." A.C.A. § 14-54-103(1), (8) (Repl. 1998).
Counties may "exercise local legislative authority not denied by the Constitution or by law." Ark. Const. amend. 55, § 1(a); accord
A.C.A. § 14-14-801(a) (Repl. 1998). They may "[p]reserve peace and order and secure freedom from dangerous or noxious activities . . . [and] [e]xercise other powers, not inconsistent with law, necessary for effective administration of authorized services and functions." A.C.A. § 14-14-801(b)(3), (13). This office has characterized the quoted statute as describing county police power. See, e.g., Op. Att'y Gen. 2009-005, 2001-006, and 97-308.
A county's expressly-granted police power appears to be at least as broad as that of a city, which, my predecessor opined, may enact a juvenile curfew. Additionally, counties may exercise any local legislative authority not denied by law, while cities, being creatures of the legislature, have only such power as is bestowed by law.See, e.g., Jones v. American Home Life Ins. Co.,293 Ark. 330, 738 S.W.2d 387 (1987). Enacting a local juvenile curfew is clearly an exercise of local legislative authority, and a juvenile curfew might reasonably be believed to promote peace and order and prevent dangerous or noxious activities. Nothing expressly limits the time of day at which a county may exercise its police power. On the face of it then, in my opinion, a county has adequate constitutional and statutory authority to enact a juvenile curfew applying at night, during the day, or at both times.
But as noted above, county legislative authority exists only where "not denied by the Constitution or by law." Ark. Const. amend. 55, § 1(a). Several provisions of state law deny or limit county legislative authority. See
A.C.A. §§ 14-14-805 to-809 (Repl. 1998). *Page 3 
While I know of no state law generally denying or limiting a county's power to enact a nighttime juvenile curfew, [1] a daytime curfew might be subject to challenge under at least two laws. One provides that a county may not take legislative action "that applies to or affects the public school system. . . ." A.C.A. § 14-14-805(3). The other prohibits a county from taking "[a]ny legislative act contrary to the general laws of the state." A.C.A. § 14-14-805(13).[2]
Here, the proposed amendment does not say why the county needs a daytime curfew or the result it is meant to achieve. Because it would apply only on school days during school hours, it could be interpreted as an effort to compel young people to attend school. Cf. Op. Att'y Gen. 90-008 (county controlled substance tax subject to challenge as contrary to general state laws prohibiting controlled substance possession).
Arkansas has a compulsory school attendance law. See
A.C.A. § 6-18-201 (Supp. 2009). An officer may stop, detain, and take into custody certain juveniles who are not at school during school hours. See A.C.A. § 6-18-221(c), (d) (Repl. 2007).[3]
School districts must adopt student attendance policies that "may include excessive unexcused absences as a mandatory basis for denial of promotion or graduation." A.C.A. § 6-18-209(a), (c) (Repl. 2007). And students excessively absent may be denied course credit and have their driver's licenses suspended, and their parents may be subject to a civil penalty. See
A.C.A. § 6-18-222 (Repl. 2007).
While I do not think it is particularly likely, a court might deem a daytime curfew that applies only on school days during school hours to be contrary to these "general laws of the state" concerning school attendance, or to impermissibly *Page 4 
affect the public school system by additionally restricting the whereabouts of juveniles.
Laws that prohibit localities from legislating in areas affecting the public schools have been interpreted in Arkansas and elsewhere. InMears v. Little Rock Sch. Dist., 268 Ark. 30, 593 S.W.2d 42 (1980), the court considered a county ordinance under which the county retained interest earned on tax money collected and held by it before distribution to school districts. The court held that the ordinance affected the public school system and was therefore prohibited under A.C.A. § 14-14-805(3). See also Op. Att'y Gen. 2005-055 (except as specifically authorized by separate statute, county's requiring reimbursement from school district for county attorney's expenses violates A.C.A. § 14-14-805(3) and other provisions limiting county power).
A similar question arose in California, where cities have police power but no authority to legislate in the area of public education, and courts have held that state truancy laws are educational, not penal. Plaintiffs challenged a city's daytime curfew, which applied only on school days, alleging that the curfew was a truancy measure, thus educational and beyond the city's authority. The court rejected the argument, holding the curfew to be a valid exercise of the city's police power, advancing a public interest in protecting unsupervised juveniles from harm and preventing them from harming others. See Harrahill v.City of Monrovia, 104 Cal. App. 4th 761, 128 Cal. Rptr. 2d 552 (2002).
Decisions applying prohibitions on local laws that conflict with general state laws are similar to those involving alleged local interference with public schools. In Kollmeyer v. Greer,267 Ark. 632, 593 S.W.2d 29 (1980), the court invalidated county ordinances that imposed local fees on real estate filings in addition to the statewide "uniform fees" imposed by statute. Holding that the ordinances were "inconsistent [with] and in conflict with" the state fees statute, the court compared the case with those involving federal preemption and stated that the General Assembly may preempt local authority by subjecting some subject matter to "pervasive" state regulation. Id. at 636-637.[4] See also Allred v. McLoud,343 Ark. 35, 31 S.W.3d 836 (2000) (initiated county term limits were contrary to general state law governing candidate qualifications); Op. Att'y Gen. 2010-021 (county *Page 5 
addition of nomination requirement for membership on an administrative board was contrary to general state laws that created appointment and confirmation scheme), 2009-070 (county may not lower no-bid purchasing threshold set by general state law), 97-181 (county may not restrict county judge's constitutional and statutory authority over county roads), and 89-175 and 88-305 (state having regulated area pervasively, county may not impose additional court costs or filing fees).
Similar arguments were raised in Harrahill,supra. California cities may make law "not in conflict with general [state] laws." Id. at 767, quoting Cal. Const. art. XI, § 7. The court held that the local curfew was not in conflict with the general (truancy) laws, in part because they were not coextensive; conduct in violation of one is not necessarily in violation of the other. Seeid. at 768. The court also said that the state cannot be said to have preempted the relevant field because the state has legislated in the area of truancy, while the curfew is a police power measure. Seeid. at 770. Finally, the court stated that its conclusion was consistent with the facts that local daytime curfews had been in effect in California at least eight years and the legislature had not in that time enacted pervasive laws on the topic. See id. at 771. While I can offer no assurances, I believe a court probably would adopt reasoning like that described in Harrahill to uphold a county daytime juvenile curfew against a challenge citing statutory limitations like those in A.C.A. § 14-14-805(3) and (13).
Finally with respect to county authority, and as noted in Op. Att'y Gen. 89-065 regarding municipal curfews, local legislative authority is generally limited and must be exercised in a reasonable and narrow way. In Town of Dyess v. Williams, 247 Ark. 155, 444 S.W.2d 701 (1969), the court considered an ordinance that required businesses to be closed between midnight and 4:00 A.M., and was intended to prevent young people from driving the town's streets in noisy cars, blowing horns, during those hours. The court invalidated the ordinance, holding that it exceeded the town's statutory authority because it unreasonably and unnecessarily prohibited innocent conduct:
 It is evident that the town's purpose could readily be accomplished by the enactment of an ordinance directly prohibiting the objectionable conduct. There is no need for the town to attain its objective indirectly by closing all places engaged in lawful business after midnight. In a similar case the Mississippi Supreme Court held invalid an ordinance that would have required drug stores, doctors, lawyers, and all businessmen to close their *Page 6 
offices by ten o'clock at night. Goodin v. City of Philadelphia, 222 Miss. 77, 75 So.2d 279 (1954). Here, too, the sweep of the ordinance goes too far beyond the necessities of the situation.
Town of Dyess, 247 Ark. at 157.
Although it is my opinion that a county may enact a curfew that applies at any time of day, a curfew's effective hours would surely be a factor in a court's decision of whether the "sweep of the ordinance" extends unreasonably past the "necessities of the situation" to be remedied by the curfew. So in this sense too, in my opinion, a county's authority to enact and enforce a daytime curfew is more limited than its authority with respect to a nighttime curfew. I believe a court would reject a Town of Dyess challenge to the proposed daytime curfew ordinance, but there can be no assurance in this regard.
Question 2 — Does the proposed ordinance, which would amend SalineCounty's current ordinance by establishing a daytime curfew forjuveniles, offend either the Arkansas or U.S. Constitution?
Existing case law provides no basis on which to opine on the proposed ordinance's constitutionality with any degree of confidence. It should be noted, however, that the ordinance, if enacted, will be presumed valid and will be enforceable until a challenger, who will bear the burden of proof, persuades a court that it is unconstitutional.See, e.g., Feland v. State, 355 Ark. 573, 142 S.W.3d 631 (2004);Thurston v. Little River County,310 Ark. 188, 832 S.W.2d 851 (1992).
None of the United States Supreme Court, the United States Court of Appeals for the Eighth Circuit, a United States District Court for an Arkansas district, the Supreme Court of Arkansas, nor the Arkansas Court of Appeals has decided a reported case addressing the constitutionality of any juvenile curfew, day or night. There is, accordingly, no binding precedent on which to rely in Arkansas.
While many cases from other jurisdictions involve constitutional challenges of nighttime juvenile curfews, I have found no case deciding a broad daytime juvenile curfew's constitutionality.[5] Ordinarily, one would expect cases addressing *Page 7 
nighttime curfews to be instructive by analogy. In this instance, however, the results of the nighttime curfew cases are remarkably inconsistent and therefore not particularly helpful in trying to predict how a court would assess any curfew ordinance. "Although less restrictive [nighttime] curfew regulations have been upheld with greater frequency, the cases do not indicate any consensus among thecourts."[6] Danny R. Veilleux, Annotation, Validity,Construction, and Effect of Juvenile CurfewRegulations, 83 A.L.R.4th 1056, § 2[a] (1991)[7] (emphasis added). One court characterized as "epic understatement" a scholar's observation of the absence of consensus among the courts. Brown v. Ashton,93 Md. App. 25, 38, 611 A.2d 599 (1992) (quoting Note, Assessing theConstitutional Validity of Juvenile Curfew Statutes, 52 NOTRE DAME LAWYER 858 (1977)).
Another commenter described the federal appeals court cases:
 The federal circuits are inconsistent on the proper treatment of [constitutional] claims [challenging nighttime juvenile curfews]: not only do they disagree on exactly what freedoms are at issue and how fundamental they are, but they also have applied varying levels of scrutiny — with different results — when determining whether those freedoms are unconstitutionally burdened. Because even those circuits hostile to nonemergency juvenile curfews have not rejected them as inherently unconstitutional, the question presented by this fractured doctrine is not whether
[nighttime] juvenile curfews are constitutional, but rather, what [nighttime] juvenile curfews are constitutional.
 * * * . . . [T]he circuits remain undeniably split on the constitutionality of [nighttime] juvenile curfews. The split involves wildly varying standards *Page 8 
of review, significant disagreement over the rights at issue, and dramatic differences in the way in which cities must prove the need for a curfew.
Note, Juvenile Curfews and the Major Confusion over Minor Rights, 118 HARV. L. REV. 2400, 2400-2401, 2421 (2005) (footnotes omitted) [hereinafter Minor Rights]. "[I]nconsistent results" characterize the state court decisions as well. David A. Herman, Note, JuvenileCurfews and the Breakdown of the Tiered Approach to EqualProtection, 82 N.Y.U. L. REV. 1857, 1861 (2007).
The decisions consider nighttime curfew laws that, while similar in some respects to each other, are unique to each case. As noted above, none involves a general daytime curfew, so there is no discussion of whether a daytime curfew is more susceptible to constitutional challenge than a nighttime curfew owing to the fact that minors, like most everyone else, have more legitimate reasons to be in public during the day than late at night. The decisions address constitutional claims of several different types, and are rendered at various procedural stages of litigation. Some resolve facial challenges while others consider curfew laws applied to particular facts.
Constitutional challenges of daytime juvenile curfews have commonly been based on the Equal Protection and Due Process Clauses of the Fifth
and Fourteenth Amendments. See Minor Rights, supra, at 2400 n. 11. In addition, though, "plaintiffs have asserted First Amendment claims that curfews interfere with minors' nocturnal political expression and association; challenges based on parents' rights to raise their children as they see fit; vagueness challenges; and Fourth Amendment challenges."Id. at 2401 n. 11. Results have varied. See, e.g., Hutchins II,supra note 6, and Schleifer v. City of Charlottesville,159 F.3d 843 (4th Cir. 1998) (curfew valid againstFirst Amendment claims); Hodgkins ex rel. Hodgkins v. Peterson,355 F.3d 1048 (7th Cir. 2004) (curfew invalid under First Amendment);Schleifer, supra, and Bykofsky v. Middletown,401 F. Supp. 1242 (M.D. Pa. 1975), aff'd mem.,535 F.2d 1245 (3d Cir. 1976), cert. denied,429 U.S. 964 (1976) (curfew valid against claims of infringement of parental rights); Anonymous v. City of Rochester,13 N.Y.3d 35, 886 N.Y.S.2d 648, 915 N.E.2d 593 (2009) (curfew invalid as infringing on parental rights); State v. Doe, No. 36606 (Idaho Mar. 26, 2010) (curfew not impermissibly vague), andNunez v. City of San Diego, 114 F.3d 935 (9th
Cir. 1997) (curfew void for vagueness).
As stated above in the quote from Minor Rights, supra, courts considering equal protection and due process claims have not agreed on the freedoms at issue or their *Page 9 
importance. See id. at 2401 n. 12 and cases cited therein. Additionally, "[t]he courts . . . have disagreed on the appropriate level of scrutiny to apply. . . ." In re A.G., No. J220062, slip op. at 2 (Cal. Ct. App. July 28, 2010) (McDonald, J., concurring). See, e.g., Sale v. Goldman,208 W. Va. 186, 539 S.E.2d 446 (2000) (rational basis test);Schleifer, supra (intermediate scrutiny); Qutb v. Strauss,11 F.3d 488 (5th Cir. 1993) (strict scrutiny).
Even where the same level of scrutiny is applied, results differ.See, e.g., Commonwealth v. Weston W.,455 Mass. 24, 913 N.E.2d 832 (2009), and Qutb, supra (strict scrutiny, curfew valid); Nunez, supra (strict scrutiny, curfew invalid); Schleifer, supra (intermediate scrutiny, curfew valid);In re A.G., supra, and Anonymous, supra (intermediate scrutiny, curfew invalid); Sale, supra (rational basis test, curfew valid); In re Spagnoletti,122 Ohio App.3d 683, 702 N.E.2d 917 (1997) (rational basis test, curfew invalid).
The inconsistency in judicial approaches and conclusions on the constitutionality of juvenile curfews has generated a cottage industry of academic comment.[8]
Given the state of the law, my opinion on the constitutionality of the proposed ordinance would be little more than speculation. Again, however, it should be noted that a local curfew ordinance will be presumed to be valid and will be enforceable until a challenger sustains the burden of proving its unconstitutionality.
Question 3 — If a county has the authority to enact a curfewordinance, can the ordinance be enforced inside the limits of each citywithin the county or would the ordinance only be enforceable in theunincorporated areas of the county? *Page 10 
As discussed in response to your first question, a county has adequate police power to enact a juvenile curfew. The constitutional and statutory provisions affirmatively establishing that power do not expressly impose any territorial limits on it, but limits unquestionably exist. No one would argue, for instance, that a county may generally and in the normal course enforce its ordinances within another county.
The general rule with respect to county authority within municipalities appears to be that a county "has no legal right to legislate for a municipality . . . upon any subject which is within the scope of the powers granted to the municipality, and particularly upon any matters involving the police power of the state." In reKnight, 55 Cal. App. 511, 517, 203 P. 777 (1921). Seealso 62 C.J.S. Municipal Corporations § 105 (1999) (repeatedly citing Knight in support of aspects of general rule). Another court stated that "[i]t is inconsistent with the purposes of [cities'] creation that counties exercise jurisdiction over their affairs. . . . This is especially true of an exercise of governmental police power." State ex rel. AudrainCounty v. City of Mexico, 355 Mo. 612, 197 S.W.2d 301, 303 (1946).
"It is firmly established that there cannot be, at the same time, within the same territory, two distinct municipal corporations, [9]
exercising the same powers, jurisdiction, and privileges." 2A Eugene McQuillin, The Law of MunicipalCorporations § 7:8, at 500 (3d ed. 1999) (footnote omitted). It is a "well settled principle that two municipal corporations cannot have co-existent control over the same territory and contemporaneously exercise essentially the same governmental powers in it. . . ." Cityof Galena Park v. City of Houston,133 S.W.2d 162, 164 (Tex. Civ. App. 1939). The Arkansas Supreme Court stated the principal reason for the general rule:
 It is hardly to be supposed that it was the intention of any enactment . . . to authorize two agencies with co-ordinate power to have control and supervision over [a single matter] when the effect might be to enable each to thwart the other and to play at cross purposes.
Sanderson v. City of Texarkana,103 Ark. 529, 534, 146 S.W.105 (1912). *Page 11 
As stated above, this office has opined that a city may impose a juvenile curfew. See Op. Att'y Gen. 89-065. I opine above that a county may also impose a juvenile curfew. It is my view, accordingly, that cities and counties in Arkansas have essentially the same governmental powers with respect to juvenile curfews. Under the general rule, then, a county's authority to exercise that power within city limits is questionable at best.
While no law expressly states or even strongly implies that counties may act within municipal limits, Arkansas law does prohibit a county from taking "[a]ny legislative act that conflicts with the exercise by municipalities of any expressed, implied, or essential powers of municipal government. . . ." A.C.A. § 14-14-805(12). This office has interpreted the statute to compel or support conclusions that a county cannot obtain court relief from a nuisance-like condition within a city, prevent construction of a landfill within a city, or dissolve a municipal fire department to be replaced with a countywide department. See Op. Att'y Gen. 2006-067, 93-065, and 89-340, respectively; cf. White County v. City of Judsonia,369 Ark. 151, 251 S.W.3d 275 (2007), and Op. Att'y Gen. 2005-017 (absent state law clearly so providing, county was without power under ambiguous statute to impose fines in city courts).
One might argue that the statute is evidence that a county has general legislative authority within municipal boundaries so long as its actions therein do not create a conflict described by the statute. One might argue on the other hand that, given municipalities' limited but real extraterritorial jurisdiction (see, e.g., A.C.A. 14-56-413 (Repl. 1998), the statute does not evidence county authority within municipalities. I state no view on that dispute because it is my opinion that a county's enforcement of its curfew within municipal limits almost certainly would create a conflict and therefore would be prohibited by A.C.A. § 14-14-805(12).
A number of Arkansas cities have enacted juvenile curfews.See, e.g., Little Rock Code of Ordinances §§ 17.5-21 to-28, North Little Rock Code of Ordinances §§ 66-96 to-102, Pine Bluff Code of Ordinances §§ 14-121 to-127. A county's attempt to enforce its own curfew in any such municipality would create a clear conflict and would be prohibited by A.C.A. § 14-14-805(12).
A closer question may arise when a municipality has not enacted its own curfew. It might be argued that such a city has notexercised (within the meaning of that word in the statute) any municipal power at all with respect to curfews and therefore that the county is free to act in the area; that a county legislative act *Page 12 
cannot create an impermissible conflict unless a municipality has affirmatively exercised its power by enacting its own ordinance or taking some other action. An advocate of this position might cite the rule of statutory construction that every word of a legislative act is presumed to have meaning. See, e.g., White County, supra. It can be argued, in other words, that the phrase "the exercise by municipalities of" would be without meaning or effect if the statute were held to prohibit county encroachment on unexercised municipal power.
One could counter that officials of a city without a curfew may in fact have exercised the city's authority by considering enacting a curfew but determining instead that one was not necessary or appropriate given local conditions. Or one might advance the views that county action in an area of municipal authority conflicts with the municipality's ability to exercise its power at some time in the future, and that such a conflict is prohibited by the statute. I expect that a court would hold that an area clearly within a city's legislative authority is generally off-limits to the county even where the city has not affirmatively acted. A predecessor in this office cited A.C.A. § 14-14-805(12) in support of the proposition that, "[g]enerally speaking, a county has authority over the unincorporated areas of the county not subject to municipal control. . . ." Op. Att'y Gen. 2006-067 (emphasis added).
Arkansas law provides that a county may, "[f]or any public purpose, contract or join with . . . any political subdivision. . . ." A.C.A. § 14-14-801(b)(4).[10] In my view, this provision likely would be held to constitute sufficient county authority to enforce a county ordinance within city limits pursuant to an agreement with the city. I believe a court would also regard the statute as an additional indication that a county generally may not act within a municipality's boundaries without its consent.
Additionally, "[i]t is well settled that a law is unconstitutionally vague under due-process standards if it does not give a person of ordinary intelligence fair notice of what is prohibited. . . ."Landmark Novelties v. Arkansas State Bd. of Pharm.,2010 Ark. 40, 2010 WL 322266, slip op. at 7. Given the legal uncertainty, described above, about the application of county ordinances, particularly police power ordinances, within municipalities, there might be some question whether the notice provided by an ordinance's enactment and any publication would be sufficient in the case of a person cited within a municipality, if the ordinance did *Page 13 
not expressly state that it is intended to apply in cities that do not have their own ordinances on the subject.
One court, noting uncertainty about county authority within city limits, stated that "it is fundamentally a legislative task to define intergovernmental relationships between cities and counties."Madison County v. Foxx,636 So.2d 39, 49 (Fla. Dist. Ct. App. 1994). The General Assembly may wish to enact clarifying legislation in this area. Existing state statutes touching on county-city relationships may also be instructive. In that regard, Act 144 of 2007 empowered counties to enact ordinances, upon request of a property owners' association, to "regulate the health, safety, and welfare" of people living in a private community in an unincorporated area of the county. A.C.A. § 14-14-814 (Supp. 2009). I state no opinion on Act 144's impact on county legislative authority, but the General Assembly likely would not have deemed the act necessary if it had understood county legislative authority to be unfettered by the existence of municipal and similar entities within the county.
Based on all the law described above, it is my opinion that, absent a municipality's consent and agreement, a county is clearly and unequivocally empowered to enforce its juvenile curfew ordinance only in unincorporated areas.
Assistant Attorney General J. M. Barker prepared this opinion, which I approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] I refer to state laws expressly addressing county legislative authority. Constitutional provisions that generally limit governmental power or protect individual rights are considered in my response to your second question.
[2] Another part of the statute prohibits counties from setting "the penalty or sentence for a misdemeanor in excess of a fine of five hundred dollars ($500) for any one (1) specified offense or violation. . . ." A.C.A. § 14-14-805(6). The existing ordinance may define a criminal offense and penalty to which parents (not juveniles) are subject, but the fine prescribed does not exceed the statutory limit.
[3] The statute also allows a school district and local law enforcement officials to establish an "Operation Stay in School Program." See A.C.A. § 6-18-221(a). It appears, however, that the statute's enforcement provisions apply in all districts, whether or not they have established such programs. See, e.g.,Jennings v. State, 69 Ark. App. 50, 10 S.W.3d 105 (2000);Walker v. State, 308 Ark. 498, 825 S.W.2d 822 (1992).
[4] The Kollmeyer court cited A.C.A. § 14-14-808(a) (county may not legislate "in any manner inconsistent with state law . . . in any area affirmatively subjected by law to state regulation or control") rather than A.C.A. § 14-14-805(13) (county may not enact law "contrary to the general laws of the state").
[5] In Thanh Thuy Vo v. City of Garden Grove, 115 Cal. App. 4th 425, 9 Cal. Rptr. 3d 257 (2004), a daytime juvenile curfew applying only in "cybercaf É s" was upheld against a First Amendment challenge. Harrahill, supra, involved only questions of local legislative authority.
[6] The cases do not always indicate a consensus on, let aloneamong, the courts. In Hutchins by Owens v. District ofColumbia, 144 F.3d 798 (D.C. Cir. 1998) [hereinafter HutchinsI], for example, a three-judge panel invalidated a juvenile curfew, publishing three opinions in the process. Each judge would have applied a different level of scrutiny to the plaintiffs' equal protection and due process claims. On rehearing, a plurality of the full court joined an opinion applying the same level of scrutiny as the majority opinion in Hutchins I but reaching the opposite result, upholding the curfew. See Hutchins v. District of Columbia,188 F.3d 531 (D.C. Cir. 1999) (en banc) [hereinafter HutchinsII]. The court's eleven judges filed five separate opinions. Seeid.
[7] The cited annotation is updated weekly and, when consulted in connection with preparing this opinion, discussed cases decided as recently as July 28, 2010.
[8] See, e.g., during just the last ten years, Herman,supra; Toni L. Conner, Note, Juvenile Curfews: PoliticalPandering at the Expense of a Fundamental Right, 109 W. VA. L. REV. 459 (2006/2007); Danielle Diviaio, Comment, TheGovernment is Establishing Your Child's Curfew, 21 ST. JOHN'S J. LEGAL COMMENT. 797 (2006/2007); Orly Jashinsky, Note, Liberty for All?Juvenile Curfews: Always an Unconstitutional and IneffectiveSolution, 4 RUTGERS J. L. PUB. POL'Y 546 (2006/2007); Patrick A. Hartman, Reviewing Juvenile Curfew Ordinances Under theEqual Protection Clause, 9 HOLY CROSS J. L. PUB. POL'Y 50 (2005);Minor Rights, supra; Todd Kaminsky, Rethinking Judicial AttitudesToward Freedom of Association Challenges to Teen Curfews: TheFirst Amendment Exception Explored, 78 N.Y.U. L. REV. 2278 (2003); Calvin Massey, Juvenile Curfews and Fundamental RightsMethodology, 27 HASTINGS CONST. L.Q. 775 (2000); Patryk J. Chudy, Note, Doctrinal Reconstruction: Reconciling Conflicting Standards inAdjudicating Juvenile Curfew Challenges, 85 CORNELL L. REV. 518 (2000); Deirdre E. Norton, Note, WhyCriminalize Children? Looking Beyond the Express Policies DrivingJuvenile Curfew Legislation, 4 N.Y.U. J. LEGIS. PUB. POL'Y 175 (2000); and Benjamin C. Sass É, Note, Curfew Laws, Freedomof Movement, and the Rights of Juveniles, 50 CASE W. RES. L. REV. 681 (2000).
[9] An Arkansas county is a municipal corporation. See, e.g., WhiteCounty, supra.
[10] A municipality is a political subdivision. See, e.g., Op. Att'y Gen. 2007-014.